# HEWITT ET AL. *v.* HELMS

No. 85–1630.   Argued March 4, 1987—Decided June 19, 1987

SCALIA, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, POWELL, and O'CONNOR, JJ., joined. MARSHALL, J., filed a dissenting opinion, in which BRENNAN, BLACKMUN, and STEVENS, JJ., joined, *post*, p. 764.

*Thomas G. Saylor, Jr.*, First Deputy Attorney General of Pennsylvania, argued the cause for petitioners. With him on the briefs were *LeRoy S. Zimmerman*, Attorney General, *Allen C. Warshaw*, Executive Deputy Attorney General, *Andrew S. Gordon*, Chief Deputy Attorney General, and *Gregory R. Neuhauser*, Senior Deputy Attorney General.

*Deputy Solicitor General Wallace* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Fried, Assistant Attorney General Willard, Harriet S. Shapiro,* and *William Kanter.*

*Robert H. Vesely* argued the cause for respondent. With him on the brief was *John M. Humphrey.**

JUSTICE SCALIA delivered the opinion of the Court.

This case presents the peculiar-sounding question whether a party who litigates to judgment and loses on all of his claims can nonetheless be a "prevailing party" for purposes of an award of attorney's fees.

Following a prison riot at the Pennsylvania State Correctional Institution at Huntingdon, inmate Aaron Helms was placed in administrative segregation, a form of restrictive custody, pending an investigation into his possible involvement in the disturbance. More than seven weeks later, a prison hearing committee, relying solely on an officer's report of the testimony of an undisclosed informant, found Helms guilty of misconduct for striking a corrections officer during the riot. Helms was sentenced to six months of disciplinary restrictive confinement.

While still incarcerated, Helms brought suit under 42 U. S. C. § 1983 against a number of prison officials, alleging that the lack of a prompt hearing on his misconduct charges and his conviction for misconduct on the basis of uncorroborated hearsay testimony violated his rights to due process. The prison officials asserted qualified immunity from suit and contested the constitutional claims on the merits. Before any decision was rendered, Helms was released from prison on parole.

Nearly six months after Helms' release, the District Court rendered summary judgment against him on his constitu-

---

*\*Benna Ruth Solomon, Joyce Holmes Benjamin,* and *Peter J. Kalis* filed a brief for the National Governors' Association et al. as *amici curiae* urging reversal.

tional claims without passing on the defendants' assertions of immunity. The Court of Appeals for the Third Circuit reversed, finding that "Helms was denied due process unless he was afforded a hearing, within a reasonable time of his initial [segregative] confinement, to determine whether he represented the type of 'risk' warranting administrative detention," *Helms* v. *Hewitt*, 655 F. 2d 487, 500 (1981) *(Helms I)*, and that he "suffered a denial of due process by being convicted on a misconduct charge when the only evidence offered against him was a hearsay recital, by the charging officer, of an uncorroborated report of an unidentified informant." *Id.*, at 502. The District Court was instructed to enter summary judgment for Helms on the latter claim unless the defendants could establish an immunity defense.

Before the proceedings on remand could take place, we granted certiorari to determine whether Helms' administrative segregation violated the Due Process Clause. We concluded that the prison's informal, nonadversarial procedures for determining the need for restrictive custody provided all the process that is due when prisoners are removed from the general prison population. *Hewitt* v. *Helms*, 459 U. S. 460 (1983). Certiorari was not sought on, and we did not decide, the question whether Helms' misconduct conviction violated his constitutional rights. When the case was returned to the Court of Appeals, it therefore reaffirmed its instruction to the District Court to enter judgment for Helms on this claim unless the defendants established a defense of official immunity. *Helms* v. *Hewitt*, 712 F. 2d 48 (1983) *(Helms II)*.

In the District Court, Helms pursued only his claims for damages. The District Court granted summary judgment for all the defendants on the basis of qualified immunity, because the constitutional right at issue was not "clearly established," *Harlow* v. *Fitzgerald*, 457 U. S. 800, 818 (1982), at the time of Helms' misconduct hearing. See App. 22a–47a. Helms appealed, seeking both damages and expungement of his misconduct conviction. The defendants argued to the

Court of Appeals that all claims for injunctive and declaratory relief had been waived by the failure to pursue them in the District Court, and in any event were moot because Helms was no longer in prison. While that appeal was pending, the Pennsylvania Bureau of Corrections revised its regulations to include for the first time procedures for the use of confidential-source information in inmate disciplinary proceedings. See BC–ADM 801 Administrative Directive: Inmate Disciplinary Procedures § V(F) (1984), App. 101a–102a (Directive 801). The District Court's decision was affirmed without opinion. *Helms* v. *Hewitt*, 745 F. 2d 46 (1984) *(Helms III)*.

Helms then sought attorney's fees under 42 U. S. C. § 1988, which provides in relevant part: "In any action or proceeding to enforce a provision of [§ 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." The District Court denied the claim on the ground that Helms was not a "prevailing party": the defendants' official immunity precluded a damages award, Helms' release from prison made his claims for injunctive relief moot, and he could not claim that his suit was a "catalyst" for the amendment of Directive 801 because he neither sought nor benefited from that action. App. to Pet. for Cert. 27a–39a. The Court of Appeals reversed, concluding that its prior holding that Helms' constitutional rights were violated was "a form of judicial relief which serves to affirm the plaintiff's assertion that the defendants' actions were unconstitutional and which will serve as a standard of conduct to guide prison officials in the future." 780 F. 2d 367, 370 (1986) *(Helms IV)*. The court also directed the District Court to reconsider whether Helms' suit was a "catalyst" for the amendment of Directive 801. We granted certiorari. 476 U. S. 1181 (1986).

In order to be eligible for attorney's fees under § 1988, a litigant must be a "prevailing party." Whatever the outer boundaries of that term may be, Helms does not fit within

them.   Respect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail.   See *Hanrahan* v. *Hampton*, 446 U. S. 754, 757 (1980).   Helms obtained no relief.   Because of the defendants' official immunity he received no damages award.   No injunction or declaratory judgment was entered in his favor.   Nor did Helms obtain relief without benefit of a formal judgment—for example, through a consent decree or settlement.   See *Maher* v. *Gagne*, 448 U. S. 122, 129 (1980).   The most that he obtained was an interlocutory ruling that his complaint should not have been dismissed for failure to state a constitutional claim.   That is not the stuff of which legal victories are made.   Cf. *Hanrahan*, *supra*, at 758–759.

The Court of Appeals treated its 1981 holding that Helms' misconduct conviction was unconstitutional as "a form of judicial relief"—presumably (since nothing else is even conceivable) a form of declaratory judgment.   It was not that. *Helms I* explicitly left it to the District Court "to determine the appropriateness and availability of the requested relief," 655 F. 2d, at 503; the Court of Appeals granted no relief of its own, declaratory or otherwise.   The petitioners contend that the court in fact *could not* have granted declaratory or injunctive relief at that point, since all of Helms' nonmonetary claims were moot as a result of his release from prison. Even if that is not correct, and Helms' interest in expungement of the misconduct conviction from his prison record was enough to keep those claims alive, the fact is that Helms' counsel never took the steps necessary to have a declaratory judgment or expungement order properly entered.   Consequently, Helms received no judicial relief.

It is settled law, of course, that relief need not be judicially decreed in order to justify a fee award under § 1988.   A lawsuit sometimes produces voluntary action by the defendant that affords the plaintiff all or some of the relief he sought through a judgment—*e. g.*, a monetary settlement or a

change in conduct that redresses the plaintiff's grievances. When that occurs, the plaintiff is deemed to have prevailed despite the absence of a formal judgment in his favor. See *Maher*, *supra*, at 129. The Court of Appeals held, and Helms argues here, that the statement of law in *Helms I* that Helms' disciplinary proceeding was unconstitutional is a "vindication of . . . rights," Brief for Respondent 19, that is at least the equivalent of declaratory relief, just as a monetary settlement is the informal equivalent of relief by way of damages. To suggest such an equivalency is to lose sight of the nature of the judicial process. In all civil litigation, the judicial decree is not the end but the means. At the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant that the judgment produces—the payment of damages, or some specific performance, or the termination of some conduct. Redress is sought *through* the court, but *from* the defendant. This is no less true of a declaratory judgment suit than of any other action. The real value of the judicial pronouncement—what makes it a proper judicial resolution of a "case or controversy" rather than an advisory opinion—is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff.* The "equivalency" doctrine is simply an acknowledgment of the primacy of the redress over the means by which it is obtained. If the defendant, under the pressure of the lawsuit, pays over a money claim before the judicial judgment is pronounced, the plaintiff has "prevailed" in his suit, because he has obtained the substance of what he sought. Likewise in a declaratory judgment action: if the defendant, under pressure of the lawsuit, alters his conduct (or threatened conduct) towards the plaintiff that was the basis for the suit, the plaintiff will have prevailed. *That* is the proper equivalent of a judicial judgment which would produce the same effect; a judicial statement that does not affect the relationship between the plaintiff and the defendant is *not* an equivalent. As a consequence of the present lawsuit, Helms obtained nothing

from the defendants. The only "relief" he received was the moral satisfaction of knowing that a federal court concluded that his rights had been violated. The same moral satisfaction presumably results from any favorable statement of law in an otherwise unfavorable opinion. There would be no conceivable claim that the plaintiff had "prevailed," for instance, if the District Court in this case had first decided the question of immunity, and the Court of Appeals affirmed in a published opinion which said: "The defendants are immune from suit for damages, and the claim for expungement is either moot or has been waived, but if not for that we would reverse because Helms' constitutional rights were violated." That is in essence what happened here, except that the Court of Appeals expressed its view on the constitutional rights *before,* rather than *after,* it had become apparent that the issue was irrelevant to the case. There is no warrant for having status as a "prevailing party" depend upon the essentially arbitrary order in which district courts or courts of appeals choose to address issues.

Besides the incompatibility in principle, there is a very practical objection to equating statements of law (even legal holdings en route to a final judgment for the defendant) with declaratory judgments: The equation deprives the defendant of valid defenses to a declaratory judgment to which he is entitled. Imagine that following *Helms I,* Helms' counsel, armed with the holding that his client's constitutional rights had been violated, pressed the District Court for entry of a declaratory judgment. The defendants would then have had the opportunity to contest its entry not only on the ground that the case was moot but also on equitable grounds. The fact that a court *can* enter a declaratory judgment does not mean that it *should.* See 28 U. S. C. § 2201 (a court *"may* declare the rights and other legal relations of any interested party seeking such declaration") (emphasis added); *Public Affairs Associates, Inc.* v. *Rickover,* 369 U. S. 111, 112 (1962); *Eccles* v. *Peoples Bank of Lakewood,* 333 U. S. 426,

431 (1948). If, for example, *Helms I* had unambiguously involved only a claim for damages, the requested declaratory judgment would not definitively "settle the controversy between the parties," 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2759, p. 648 (2d ed. 1983), because immunity might still preclude liability. See generally E. Borchard, Declaratory Judgments 299 (2d ed. 1941). If the only effect of a declaratory judgment in those circumstances would be to provide a possible predicate for a fee award against defendants who may ultimately be found immune, and thus to undermine the doctrine of official immunity, it is conceivable that the court might take that into account in deciding whether to enter a judgment. The same considerations may not enter into the decision whether to include statements of law in opinions — or if they do, the court's decision is not appealable in the same manner as its entry of a declaratory judgment.

We conclude that a favorable judicial statement of law in the course of litigation that results in judgment against the plaintiff does not suffice to render him a "prevailing party." Any other result strains both the statutory language and common sense.

The Court of Appeals held in the alternative, and Helms argues in the alternative here, that a hearing is needed to determine whether Helms' lawsuit prompted the Pennsylvania Bureau of Corrections to amend its regulations in 1984 to provide standards for the use of informant testimony at disciplinary hearings. We need not decide the circumstances, if any, under which this "catalyst" theory could justify a fee award under § 1988, because even if Helms can demonstrate a clear causal link between his lawsuit and the State's amendment of its regulations, and can "prevail" by having the State take action that his complaint did not in terms request, he did not and could not get redress from promulgation of the informant-testimony regulations. When Directive 801 was amended, Helms had long since been released from prison.

Although he has subsequently been returned to prison, and is presumably now benefiting from the new procedures (to the extent that they influence prison administration even when not directly being applied), that fortuity can hardly render him, retroactively, a "prevailing party" in this lawsuit, even though he was not such when the final judgment was entered.

For the reasons stated, the judgment of the court of appeals is

*Reversed.*

JUSTICE MARSHALL, with whom JUSTICE BRENNAN, JUSTICE BLACKMUN, and JUSTICE STEVENS join, dissenting.

The Court makes a number of sweeping statements in its opinion, most of which are of no help in resolving the present case. In my view, the application of settled law to the facts of this case, tangled as they are, leads to conclusions other than those reached by the Court.

## I

The Court's account of the history of this litigation is complete, but a summary may be helpful. Respondent originally claimed in the District Court both procedural and substantive violations of due process in connection with his prison misconduct conviction, and raised in addition a pendent state claim. He sought declaratory and injunctive relief, damages, and the expungement of his prison disciplinary record. App. 19a–21a. Petitioners alleged immunity defenses, as well as contesting the merits of the federal and state claims. The District Court initially dismissed both the procedural and substantive due process causes of action. The Court of Appeals reversed as to both claims. *Helms* v. *Hewitt*, 655 F. 2d 487 (CA3 1981). We granted certiorari only as to procedural due process and reversed, reinstating the District Court's grant of summary judgment for petitioners. *Hewitt* v. *Helms*, 459 U. S. 460 (1983). On remand from this Court, the Court of Appeals noted that its substantive due process

holding concerning the use of anonymous informant evidence was unaffected by our decision, and remanded for entry of judgment in favor of respondent unless petitioners were immune. *Helms* v. *Hewitt,* 712 F. 2d 48, 49 (1983); see 655 F. 2d, at 502–503 ("[O]n remand, if the defendants do not establish official immunity . . . the district court should enter summary judgment for Helms").

The District Court, on remand from the Court of Appeals, concluded that petitioners were immune from the payment of damages because the law concerning the use of anonymous informant evidence in prison disciplinary proceedings "was not so clear and well established" at the time of respondent's disciplinary proceeding as to overcome petitioners' qualified official immunity. App. 47a. Respondent appealed from this second order granting summary judgment for petitioners. During the pendency of this appeal the Commonwealth of Pennsylvania issued Administrative Directive 801, App. 85a–116a, which incorporated policies with respect to the use of anonymous informant evidence in prison misconduct proceedings consistent with the earlier holding of the Court of Appeals. *Id.,* at 101a–102a. The Court of Appeals subsequently affirmed the District Court's judgment in a summary order. *Helms* v. *Hewitt,* 745 F. 2d 46 (CA3 1984). Respondent then moved for fees in the District Court pursuant to 42 U. S. C. § 1988.

II

Some aspects of the procedural development of this case may be difficult to fathom, but at the very least the case does not present, as the Court declares, a fee application by "a party who litigates to judgment and loses on all of his claims." *Ante,* at 757. Respondent's complaint alleged two federal causes of action. We held that respondent had not stated a viable cause of action for violation of his right to procedural due process. The final word on the substantive due process claim, however, was spoken by the Court of Appeals, which directed the District Court to enter summary judg-

ment *for* respondent on that claim unless the petitioners were immune.

The Court devotes much of its opinion to demonstrating on theoretical grounds that this statement by the Court of Appeals was not a declaratory judgment. I think that effort unnecessary; it is plain from the language of the first opinion of the Court of Appeals that it was not entering judgment for respondent. Instead, consistent with the ordinary practice of appellate courts, it simply found respondent's cause of action good as a matter of law, and remanded with instructions to enter judgment for respondent insofar as such a judgment was not incompatible with petitioners' immunity, if any. 655 F. 2d, at 502–503. The District Court then found that petitioners were entitled to qualified immunity. This precluded any remedy in damages against petitioners, but by no means prevented the ordering of delaratory or injunctive relief or a grant of attorney's fees. See *Pulliam* v. *Allen*, 466 U. S. 522, 543–544 (1984). Respondent's complaint sought relief in the form of a declaratory judgment and an injunction expunging his prison disciplinary record.[1] Under the Court of Appeals' remand order, the District Court could, and probably should, have entered judgment granting the requested declaratory and injunctive relief. Instead, the District Court

---

[1] Petitioners have taken the position that these requests for declaratory and injunctive relief were somehow mooted by respondent's release on parole in the early stages of this litigation. Brief for Petitioners 24. Indeed, petitioners represent to the Court that the District Court *found* that "[respondent's] claim for injunctive relief had been rendered moot by his release from prison in 1980." *Id.*, at 10. This statement is flagrantly inaccurate. The District Court in fact held that "plaintiff did not seek any relief which became mooted during the controversy." App. to Pet. for Cert 38a. Petitioners have offered no authority, nor can they, for the remarkable proposition that the request for expungement of respondent's record became moot upon his parole. Nor, since the expungement would have depended upon the finding that respondent's due process rights were violated, have they explained how the request for declaratory relief supposedly became moot.

first took up the question of immunity, and upon finding qualified immunity precipitately issued an order closing the case. App. 48a. No order was entered disposing of respondent's pending claims for equitable relief.[2]

Respondent contends, and the Court of Appeals agreed, that the issuance of Administrative Directive 801 during the pendency of the subsequent appeal might be the sort of informal relief justifying a fee award, if the Commonwealth's change of policy was "catalyzed" by respondent's lawsuit. There is no dispute that informal relief may be sufficient to support a fee award under § 1988. See *Maher* v. *Gagne*, 448 U. S. 122, 129–130 (1980). The Court wisely leaves for another day any discussion of the general circumstances under which action "catalyzed" by a lawsuit may be characterized as informal relief for purposes of § 1988. *Ante*, at 763. But the Court errs in holding that Administrative Directive 801 cannot constitute relief, even under a "catalyst" theory, because respondent derived no benefit from it. The Directive does not, of course, provide an informal equivalent to respondent's request for injunctive relief, because it did not effect an expungement of his disciplinary record. But the Directive may be, in substance, functionally equivalent to respondent's requested declaratory relief. As the Court correctly states, in a declaratory judgment action "if the defendant, under pressure of the lawsuit, alters his conduct (or threatened

---

[2] The record does not contain the briefs, if any, filed with the Court of Appeals on respondent's appeal from the District Court's order. Accordingly it is not clear whether respondent challenged only the District Court's holding on immunity, or also its failure to award equitable relief. Nor is it clear, since the District Court's order did not dispose of all respondent's outstanding claims, whether respondent might not even now move in the District Court for the equitable relief requested in the complaint. The issuance of such equitable relief would, of course, support a fee award under 42 U. S. C. § 1988. The remand ordered by the Court of Appeals in the judgment presently before us would give the District Court an opportunity to rectify the substantial confusion engendered by its earlier proceedings.

conduct) towards the plaintiff . . . the plaintiff will have prevailed." *Ante*, at 761. The Court observes that respondent is once again an inmate of the Commonwealth's prisons. *Ante*, at 764. The behavior of the Commonwealth's officials toward respondent is as effectively constrained by Directive 801 today as it would have been by a formal declaratory judgment.[3]

In sum, respondent's claim for fees is based upon the following premises: that the Court of Appeals held his civil rights cause of action good as a matter of law; that at the time of the District Court's judgment on the issue of immunity, respondent had outstanding meritorious claims for equitable relief; that the judgment as to petitioners' immunity did not foreclose the granting of equitable relief or an award of attorney's fees; and that the issuance of Directive 801 during the pendency of litigation provided respondent, by the voluntary action of petitioners and those in privity with them, informal relief substantially equivalent to the relief sought in respondent's prayer for a declaratory judgment. None of these propositions is subject to serious dispute, and none is rejected by the Court today. The question remains, of course, whether there is any causal connection between the litigation instituted by respondent and the Commonwealth's promulgation of Directive 801. This is an issue of fact which can only be resolved in the District Court. Should the District Court find that the promulgation of Directive 801 was not "catalyzed" by this litigation, then the error of respondent's counsel in failing to move in the District Court for formal entry of a declaratory judgment, to which respondent was clearly en-

---

[3] The Court characterizes respondent's renewed incarceration as a "fortuity," evidently implying that it has no relevance to this case. But the record does not disclose whether respondent was imprisoned after parole revocation proceedings, or instead as the result of a subsequent criminal conviction. If respondent's parole was revoked, then it is his temporary release during the course of the litigation, rather than his reincarceration, which is a "fortuity" in determining respondent's entitlement to attorney's fees.

titled under the Court of Appeals' two remand orders, would probably foreclose any fee award. But any such conclusion must await further factfinding.

## III

The disposition of this chaotic case depends upon the procedural accidents of extended litigation conducted with less than exemplary precision by the parties and the District Court. While the Court sensibly declines to establish any broadly applicable doctrine upon a basis as unreliable as the present record, it nonetheless indulges in a theoretical exposition which varies substantially from the few ascertainable facts. If further review of this litigation was a prudent exercise of our certiorari jurisdiction, which I doubt, it should have occurred after the necessary facts had been found, and the general fog of confusion dispelled, by the District Court. I would affirm the judgment of the Court of Appeals insofar as it remanded to the District Court for factual findings on respondent's "catalyst" theory.