845 F.2d 327
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Larry STEWART, Plaintiff-Appellee,
v.
James RHODES, George F. Denton, and Ted Engle, Defendants-Appellants.
 No. 87-3542.
 United States Court of Appeals, Sixth Circuit.
 April 27, 1988.
 
 Before NATHANIEL R. JONES and RALPH B. GUY, Jr., Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The defendants-appellants, James Rhodes, George Denton and Ted Engle, appeal an award of attorney's fees first made on June 3, 1981 by the United States District Court for the Southern District of Ohio. The district court held that Larry Stewart, the plaintiff-appellee, was a "prevailing party" and therefore, pursuant to 42 U.S.C. Section 1988, entitled to attorney's fees.
 
 
 2
 Appellants challenged this award on successive judicial levels. The Sixth Circuit Court of Appeals affirmed the lower court's judgment on May 25, 1982. On May 31, 1983, however, the United States Supreme Court vacated the judgment and remanded the case to us for further consideration in light of Hensley v. Eckerhart, 461 U.S. 424 (1983). Upon our remand, the district court, on July 25, 1986, again determined that Stewart was a prevailing party and entitled to attorney's fees. Appellants now challenge that decision. For the following reasons, we find the appellants' claims without merit and therefore affirm the district court's judgment.
 
 I.
 
 3
 The plaintiff-appellee, Larry Stewart, and Albert Reese, former Ohio prisoners, made their first request to receive "Hustler" magazine on May 1, 1976, while imprisoned at Chillicothe Correctional Institute in Chillicothe, Ohio. They were, however, denied access to the magazine by prison officials. In December 1976, approximately seven months later, the Ohio Department of Rehabilitation and Correction adopted Administrative Regulation 5120-9-19. This regulation established criteria for prison officials to refer to in deciding whether to ban printed material from Ohio's prisons and also set forth procedures for prisoners to follow to appeal such a ban. Following the adoption of this regulation, on June 15, 1977, Stewart and Reese again requested and were denied permission to receive "Hustler" magazine. The proper criteria was not applied by the prison officials nor were the proper procedures for an appeal followed by Stewart and Reese.
 
 
 4
 On January 17, 1978, Stewart and Reese filed a 42 U.S.C. Section 1983 action. They requested the district court to declare the acts, policies, and procedures of the appellants as violative of their constitutional rights. They also requested a preliminary and permanent injunction which would allow them to receive "Hustler" magazine and would prohibit any retaliation against them for bringing their action.
 
 
 5
 The case was first decided by the district court on April 2, 1981. Neither Stewart nor Reese, however, was incarcerated at that time. Stewart was paroled on March 15, 1978 and given a final release from parole on January 17, 1980. Reese died on February 18, 1979. The issue of mootness, however, does not appear to have been raised at the trial court level. The opinion itself suggests that the court was unaware that Stewart and Reese were no longer incarcerated. In rendering his decision, Judge Duncan specifically stated:
 
 
 6
 [T]he plaintiffs are inmates at the Chillicothe Correctional Institute in Chillicothe, Ohio, in custody of the Department of Rehabilitation and Corrections of the State of Ohio.
 
 
 7
 J.App. at A9.
 
 
 8
 Although the district court did not order the injunction requested by Stewart and Reese, it did determine that Stewart and Reese's constitutional rights had been violated. The court determined that the appellants did not provide notice, an opportunity to be heard and an ultimate determination by a disinterested decision-maker. The district court ordered application of the procedural and substantive safeguards established by the courts and Administrative Regulation 5120-9-19. Following the original hearing, the district court awarded attorney's fees and expenses to Stewart pursuant to 42 U.S.C. Section 1988.
 
 II.
 
 9
 In reviewing this decision, we look to the governing statute, 42 U.S.C. Section 1988 (1982), for guidance. The statute provides that in federal civil rights actions "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." (emphasis added). This language has prompted many courts, including this one, to review a lower court's determination under this statute pursuant to an abuse of discretion standard. See, e.g., Louisville Black Police Officer's Organization v. City of Louisville, 700 F.2d 268, 273-74 (6th Cir.1983).
 
 III.
 
 10
 The appellants claim that the district court abused its discretion in two instances. They argue that Stewart is not a prevailing party because his claim was moot prior to the time a judgment was received. They also claim that Stewart received insufficient relief to fall within the category of "prevailing party." Both claims are without merit.
 
 A.
 
 11
 Mootness does not preclude a finding that Stewart is a prevailing party and thus entitled to attorney's fees under Section 1988. Indeed, this court has previously made such a determination in a 1974 attorney's fees case. In Ramey v. Cincinnati Enquirer, Inc., 508 F.2d 1188, 1196 (6th Cir.1974), cert. denied, 422 U.S. 1048 (1975), attorney's fees were awarded by this court in a shareholder derivative suit which was dismissed as moot after the trial but before adjudication. In rendering its decision, this court stated: "[T]he fact that these suits became moot does not preclude a recovery of attorneys' fees. So long as a substantial benefit is conferred upon the corporation, it is not necessary that the litigation be brought to a successful completion." Ramey, 508 F.2d at 1196.
 
 
 12
 The Fifth Circuit Court of Appeals cited our decision in Ramey for support of its decision in a Section 1988 attorney's fees case. The court stated:[A] determination of mootness neither precludes nor is precluded by an award of attorneys' fees. The attorneys' fees question turns instead on a wholly independent consideration: whether plaintiff is a "prevailing party."
 
 
 13
 Doe v. Marshall, 622 F.2d 118, 120 (5th Cir.1980), cert. denied, 451 U.S. 993 (1981).
 
 
 14
 The Ninth Circuit Court of Appeals also took a similar position regarding the award of attorney's fees in a civil rights action. The court stated: "Claims for attorneys' fees ancillary to the case survive independently under the court's equitable jurisdiction, and may be heard even though the underlying case has become moot." Williams v. Alioto, 625 F.2d 845, 848 (9th Cir.1980), cert. denied, 450 U.S. 1012 (1981). The Williams court also relied upon the fact that the plaintiff had obtained a judicial determination that the defendants had acted unconstitutionally as further justification to award the attorney's fees. Williams, 625 F.2d at 848.
 
 
 15
 Thus, it is clear that once a district court has entered judgment and awarded attorney's fees, mootness should not, and, in this circuit, cannot defeat the award. Thus, although the appellants are free to claim that the district court's order that certain procedural and substantive safeguards be followed is moot, the award of attorney's fees, as an ancillary issue, stands.
 
 B.
 
 16
 Furthermore, the definition of a prevailing party as defined by Hensley v. Eckerhart, 461 U.S. 424 (1983), and as further refined by Hewitt v. Helms, 107 S.Ct. 2672 (1987), does not preclude a finding that Stewart is a prevailing party and thus entitled to attorney's fees.
 
 
 17
 The Hensley Court defined a prevailing party as one who succeeds "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." Hensley, 461 U.S. at 433 (citation omitted). While it is true that Judge Duncan's order requiring the appellants to comply with the requirements of due process--notice, an opportunity to be heard and a disinterested decision-maker--was only one of two judgments sought by Stewart and Reese, it clearly comprised a significant portion of the benefit which they sought.
 
 
 18
 The Hewitt Court, however, did place a further restriction on the definition of prevailing party. That Court held that a judicial statement that the plaintiff had suffered a denial of due process did not constitute sufficient relief to make the plaintiff a prevailing party. However, the Hewitt Court specifically stated that, in that case, "[n]o injunction or declaratory judgment was entered in [the plaintiff's] favor." Hewitt, 107 S.Ct. at 2675. The district court in this case, however, did enter such a judgment in Stewart's favor. See J.App. at A23.
 
 
 19
 An apparent conflict is seemingly created by the Hewitt Court's statement that "[t]he real value of [a] judicial pronouncement ... is in the settling of some dispute which affects the behavior of the defendant towards the plaintiff." Hewitt, 107 S.Ct. at 2676 (emphasis in original). Because neither Stewart nor Reese was incarcerated at the time of the judgment, the appellants' behavior toward Stewart and Reese was seemingly not changed. However, a consideration of the Hewitt Court's focus on the form of the ruling resolves this conflict. The Hewitt Court stated that "[t]he most [the plaintiff] obtained was an interlocutory ruling that his complaint should not have been dismissed for failure to state a constitutional claim. That is not the stuff of which legal victories are made." Hewitt, 107 S.Ct. at 2675. However, if the Hewitt Court had found that the plaintiff had received a judgment rather than an interlocutory ruling, its inquiry would have ended and its decision would have been different.
 
 
 20
 In this case, Stewart received more than an interlocutory order. The order for the prison officials to comply with constitutional due process was in the form of a final judgment by the district court. This fact forestalls a determination that the judicial pronouncement has no real value.
 
 
 21
 Although Stewart was no longer in prison when his case was heard, he nevertheless received some of the benefit he originally sought. Stewart is a prevailing party as the result of the district court's judgment directing the appellants to comply with the constitutional requirements of notice, opportunity to be heard and an ultimate determination by a disinterested decision-maker. Accordingly, the district court did not abuse its discretion by awarding attorney's fees.
 
 
 22
 Therefore, for the foregoing reasons, the lower court's judgment is hereby AFFIRMED.
 
 
 23
 RALPH B. GUY, Jr., Circuit Judge, dissenting.
 
 
 24
 Since I find an award of attorneys' fees to be inappropriate here, I dissent from the conclusion reached in the majority opinion.
 
 I.
 
 25
 On March 15, 1978, less than sixty days after this suit was filed, plaintiff Stewart was paroled. He was given a final release from parole on January 17, 1980, and has never been reimprisoned in Ohio.
 
 
 26
 On February 18, 1979, thirteen months after this litigation commenced, co-plaintiff Reese died. There has never been any substitution of parties following Reese's death.[1] On April 2, 1981, the district court, on the basis of a set of stipulated facts filed in 1978, granted a judgment. The judgment was subsequently amended on May 19, 1981, and reads in pertinent part:
 
 
 27
 IT IS ORDERED AND ADJUDGED THAT: the Court orders the defendants, upon request by the plaintiff or any prisoner of the State of Ohio, to conduct a hearing at which the prisoner or his representative will appear and be heard concerning his wish to receive Hustler, the person requesting the hearing will be joined as a party plaintiff in this case, to submit the question anew for a determination and to allow for a disinterested final decisionmaker to determine whether Hustler may lawfully be barred from the prison. The defendants may use the procedures outlined in 5190-9-19(F) and (G) in implementing this order.
 
 
 28
 Any decision to censor the publication at the institution must be made for reasons that are consistent with penological objectives as stated in Pell v. Procunier, supra; Guajardo v. Estelle, supra, and this opinion.
 
 
 29
 The defendants are ordered to hold a hearing and render a decision within thirty (30) days of the date of the request.
 
 
 30
 (Appendix 23).
 
 
 31
 Plaintiffs then moved for attorney fees and, by judgment entered June 4, 1981, the district court awarded $5,306.25. Defendants appealed from the award of attorney fees only and this court affirmed the award in an unpublished order (No. 81-3395) dated May 25, 1982. Defendants then filed a petition for a writ of certiorari with the Supreme Court and, on May 31, 1983, the petition was granted and the judgment was vacated and remanded for further consideration in light of Hensley v. Eckerhart, 461 U.S. 424 (1983). Rhodes v. Stewart, 461 U.S. 952 (1983).[2] Almost three years later, the district court, on remand, again awarded the same amount of attorney fees, and this appeal followed.
 
 II.
 
 32
 The State has framed the issue on appeal as follows:
 
 
 33
 The plaintiff-appellee's claim that he had been unconstitutionally denied "Hustler Magazine" was mooted by his release from prison and the death of his co-plaintiff. The district court's statement that the administrative regulation in question was constitutionally sound was not favorable to the plaintiff and was rendered two years after the claim became moot. The plaintiff-appellee obtained nothing as a consequence of his 41 U.S.C. Sec. 1983 suit and was not entitled to an award of attorneys' fees under 42 U.S.C. Sec. 1988 as the "prevailing party."
 
 
 34
 There are two major problems with the issue as framed. First, the State never appealed the merits of the district court decision and so any discussion of a "claim" being mooted is inappropriate. The State either knew or should have known about the status of Stewart and Reese before the district court ever entered a judgment, but there is no evidence that it ever made a mootness argument relative to the merits in the district court. This may be explained by the fact that the "relief" ordered by the district court was so innocuous that the State really was not concerned about mootness. Since the mootness was "party mootness" and not "issue mootness," the State may have concluded that it may as well face the issue now since another inmate could bring the same kind of suit.
 
 
 35
 The second problem with the issue as framed by the State is that its reference to the district court finding the State's administrative regulation "constitutionally sound" is disingenuous at best and intentionally misleading at worst. No one has ever contended that the basis for awarding attorney fees was that the court found an administrative regulation unconstitutional. What the court concluded was that the State failed to follow its own valid regulations.
 
 
 36
 The plaintiff is equally culpable in his approach to this case. Stewart's counsel[3] frames the issue as follows:
 
 
 37
 The claim of plaintiff-appellee ("Mr. Stewart") did not become moot simply because the litigation was prolonged until he had been released from prison. Nor did Mr. Stewart lose his identification as a prevailing party simply because he failed to obtain all of the relief which he requested or because he sought to take advantage of his legal victory in the manner defendants-appellants now suggest he should have. He is a "prevailing party," as the District court specifically found, and is entitled to an award of attorneys' fees under 42 U.S.C. Sec. 1988.
 
 
 38
 First, the implication that the State somehow "prolonged" this litigation until Stewart was released from prison is nonsense. Stewart was released eight weeks after the suit was filed.
 
 
 39
 Second, no one is arguing that Stewart is not a "prevailing party" because he failed to obtain all the relief requested. The State (now, at least) is arguing that at the time judgment was entered in this case, Stewart was no longer in a position to be a beneficiary of any of the relief granted.
 
 
 40
 There are other problems presented as well. The judgment reads as if this were a class action affording relief to all the prisoners in the State of Ohio. This clearly was not a class action. Plaintiff argues in his brief as if this were a class action. For example, at page six, he states:
 
 
 41
 Since the appellants may not now ban "Hustler" unless they meet substantive constitutional standards in a procedurally satisfactory manner, the defendant's behavior toward the prisoners has been affected by Mr. Stewart's lawsuit...."
 
 
 42
 (Emphasis added). What prisoners? Certainly not Mr. Reese who was dead and gone, and certainly not Mr. Stewart who was not only paroled more than three years before judgment was entered, but also had even concluded his parole a year and a half before judgment.
 
 III.
 
 43
 Although this case should have been dismissed due to mootness before judgment was ever entered, no one ever made this argument nor appealed the case on the merits. Therefore, mootness is only implicated now to the degree it interrelates with whether plaintiff was a prevailing party. Since both of the original plaintiffs were removed from prison one way or another long before a judgment was entered in this case, they could not have benefitted in any way from the judgment. Although they might receive some psychic satisfaction from having achieved a kind of Pyrrhic victory over the Establishment and might take comfort in the thought that they have expanded the literary horizons for their former colleagues, they simply did not benefit from the judgment in any way that would make them a prevailing party under the rationale of Hensley v. Eckerhart, 461 U.S. 424 (1983), and its progeny. I would reverse the district court judgment.
 
 
 
 [1]
 Fed.R.Civ.P. 25(a)(1) provides in relevant part:
 If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties.... Unless the motion for substitution is made not later than 90 days after the death is suggested ... the action shall be dismissed as to the deceased party.
 We need not decide whether Reese's death in and of itself extinguished his claim since it is clear that by failure to comply with Rule 25, the action must be dismissed as to Reese.2 Hensley's principal holding is that the "reasonableness" of attorney fees awarded should be tied at least in part to "the degree of success obtained." 461 U.S. at 436. Its holding is not particularly helpful in deciding whether a plaintiff prevailed at all.
 
 
 [3]
 It is highly doubtful that Stewart has any interest in this case since the attorney fees, if collected, would go to the attorney and no money damages were sought