893 F.2d 205
 58 USLW 2081, 35 Cont.Cas.Fed. (CCH) 75,690,
36 Cont.Cas.Fed. (CCH) 75,789
 LEAR SIEGLER, INC., ENERGY PRODUCTS DIVISION,
Plaintiff-Appellee/Cross-Appellant,
v.
John LEHMAN, Secretary of the Navy, et al.,
Defendants-Appellants/Cross-Appellees
LEAR SIEGLER, INC., Plaintiff-Appellee,
and
United States Senate; United States House of
Representatives, Plaintiffs-Intervenors/Appellees,
v.
John LEHMAN, Secretary of the Navy; William Stevenson,
Contracting Officer, Defendants-Appellees.
 Nos. 86-6496, 87-5698, 87-5670.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 16, 1989.
Decided July 17, 1989.
As Amended Jan. 10, 1990.
 
 Douglas N. Letter, Jacob M. Lewis and Robert K. Rasmussen, Appellate Staff, Dept. of Justice, Washington, D.C., for defendants-appellants/cross-appellees.
 Peter B. Jones, Foster, Jones & Donovan, Irvine, Cal., for plaintiff-appellee/cross-appellant.
 Appeal from the United States District Court for the Central District of California.
 Before GOODWIN, Chief Judge, HUG, TANG, SCHROEDER, FLETCHER, PREGERSON, CANBY, NORRIS, HALL, NOONAN and THOMPSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 A panel decision affirming a district court award of attorney fees was taken en banc by a majority vote of the judges of this court, and the case was reargued pursuant to Circuit Rule 35-3. The court has concluded that the award of attorney fees was not authorized by statute. Accordingly, Part III of the decision published in Lear Siegler, Inc. Energy Products Div. v. Lehman, 842 F.2d 1102 (9th Cir.1988) is withdrawn from publication, and the judgment of the district court awarding attorney fees to Lear Siegler is reversed.
 
 Procedural Background
 
 2
 The case was a complex and hard fought challenge to the Navy's procurement policy. Controversial legislation had been enacted by Congress. This legislation was partly ignored by the Navy upon advice of the Attorney General. See Competition in Contracting Act of 1984 (CICA) Pub.L. No. 98-369, 98 Stat. 1199, 31 U.S.C. Secs. 3551-3556; Lear Siegler, Inc. Energy Products Div. v. Lehman, supra, at 1104; Ameron v. U.S. Army Corps of Engineers, 787 F.2d 875, 889-90, modified, 809 F.2d 979 (3rd Cir.1986), cert. granted, --- U.S. ----, 108 S.Ct. 1218, 99 L.Ed.2d 419 (1988), cert. dismissed, 485 U.S. 958, 109 S.Ct. 297, 102 L.Ed.2d 264 (1988).
 
 
 3
 Lear Siegler, believing the Navy had violated the CICA, commenced this action after a bid protest had proved futile. (The Navy had awarded a procurement contract to a competitor.) The complaint sought declaratory and injunctive relief against the Navy and a ruling on Lear Siegler's bid protest.
 
 
 4
 The United States Senate filed a complaint in intervention, seeking a judgment declaring that 31 U.S.C. Secs. 3551-3556 was constitutional, and that the stay provision of the CICA was valid. The Comptroller General and the House of Representatives subsequently joined as intervenors.
 
 
 5
 In due course, the district court granted in part certain motions and denied others. Because the only issue before this court on reargument is whether Lear Siegler was entitled to attorney fees, we will first outline the chronology of the district court's rulings and then consider whether Lear Siegler was a "prevailing party" within the meaning of Sec. 2412(b) of the Equal Access to Justice Act, 28 U.S.C. Sec. 2412(b), or otherwise entitled to attorney fees.
 
 Chronology
 
 6
 1. This action was originally filed and served on February 19, 1985. Lear Siegler briefly argued the constitutional issue the same day the complaint was filed in its memorandum in support of an application for a temporary restraining order. It again argued the issue in its March 6, 1985, reply to the government's Opposition to the Preliminary Injunction.
 
 
 7
 2. The district court's order of March 13, 1985, denied Lear Siegler's request for an injunction, ruling that the government had constructively complied with the provisions of the statute. The court then stated that a ruling on the constitutionality of the statute was unnecessary. The March 13 order afforded no relief to Lear Siegler. The order was critical of the Navy's attempt to force a determination of constitutionality, but this language affected the rights of no party.
 
 
 8
 3. Two days later, March 15, 1985, the district court denied Lear Siegler's motion for reconsideration, again criticizing the Navy's "judicial 'gamesmanship.' " Here again, however, the order gave Lear Siegler nothing.
 
 
 9
 4. On November 21, 1985, the court ruled on cross motions for summary judgment of Lear Siegler, the Senate and the Secretary of the Navy. The court granted the Senate's motion for summary judgment, holding the statute constitutional. This is the only place in the record where the district court said the statute was constitutional. The district court essentially followed the district of New Jersey decisions in Ameron. 610 F.Supp. 750 (D.N.J.1985); 607 F.Supp. 962 (D.N.J.1985). The November 21 order does not rule on the merits of Lear Siegler's motion. Instead, it calls upon the government to submit further briefing on the issue whether the "Buy-American Act" was properly waived. On its face, the order granted only the relief sought by the Senate, and nothing more. The order did not grant any relief sought by Lear Siegler. At this point only the Senate, and not Lear Siegler, had received a declaration of the constitutionality of the statute in litigation. The order of November 21 found the Navy in compliance with a constitutional statute which the Navy originally had treated as unconstitutional. The order denied all relief to Lear Siegler.
 
 
 10
 5. The November 21 order goes on, however, to award attorneys' fees to Lear Siegler, saying that the "government's conduct certainly cannot justify forcing plaintiff to bear the expense of litigation to compel the government to follow the law." The award covers only fees incurred in litigating the Navy's violation of CICA. The order contains no finding that Lear Siegler was a prevailing party, nor does the order offer any other statutory basis for the award of fees.
 
 
 11
 6. On March 27, 1986, the court ruled upon the Navy's motion for reconsideration of the award of fees, denied the motion and based the award on 28 U.S.C. Sec. 2412(d)(1)(A), stating that the position of the United States was not "substantially justified." Again, there is no express finding or conclusion that Lear Siegler is a prevailing party, but the court appears to assume that Lear Siegler prevailed in some sense, at least as an incidental beneficiary of the Senate's summary judgment.
 
 
 12
 7. On June 30, 1986, the court entered its order on the merits granting summary judgment in favor of the Navy and other defendants including the successful bidder whose contract precipitated the litigation. This order gave no relief to Lear Siegler.
 
 
 13
 8. On August 15, 1986, the district court finally confronted the fact that Lear Siegler was not eligible to receive fees pursuant to Sec. 2412(d)(1)(A) because Lear Siegler did not meet the net worth requirements of Sec. 2412(d)(2)(B)(ii), and entered an order awarding fees and costs pursuant to Sec. 2412(b), which the court described as authorizing fees when the federal government had acted in "bad faith, vexatiously, wantonly or for oppressive reasons." The order went on to find "that the Government's conduct as set forth in the court's previous findings warrant an award of attorneys' fees pursuant to Sec. 2412(b)."
 
 
 14
 Paragraph 6 of the prayer of Lear Siegler's complaint sought an order declaring that the Navy's "refusal to comply with the Competition in Contracting Act ... is unlawful." Lear Siegler never received an order declaring Navy behavior in any sense "unlawful." The district court eventually found that the Navy had complied with the CICA. The court granted a partial summary judgment to the Senate on the Senate's motion for a declaration that the Act was constitutional, and then in effect ruled that the Navy had complied with the Act. Lear Siegler's motion had not addressed the constitutionality of the CICA.
 
 Discussion
 
 15
 Under the standard set forth by the Supreme Court in Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), no fee award is permissible until the plaintiff has crossed the "statutory threshold" of prevailing party status. Id. at 433, 103 S.Ct. at 1939. Our interpretation of the meaning of "prevailing party" is informed by the holding in Hensley: " '[P]laintiffs may be considered "prevailing parties" for attorney's fees if they succeed on any significant issue in the litigation which achieves some of the benefit the parties sought in bringing suit.' " Id. (quoting Nadeau v. Helgemoe, 581 F.2d 275 278-79 (1st Cir.1978)); see Animal Lovers Volunteer Ass'n v. Carlucci, 867 F.2d 1224, 1225 (9th Cir.1989); McQuiston v. Marsh, 707 F.2d 1082, 1085 (9th Cir.1983). The Supreme Court recently reaffirmed the Hensley standard in Texas State Teachers Ass'n v. Garland Indep. School Dist., --- U.S. ----, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989).
 
 
 16
 Lear Siegler apparently expended some minimal effort in briefing the issue of the CICA's constitutionality prior to the intervention by the Senate. Once the Senate intervened Lear Siegler concentrated on its challenge to the Navy's bid and award proceedings and let the Senate carry the ball on the constitutionality issue. Lear Siegler's initial expenditure of effort on the constitutional question, however, will not suffice to garner it "prevailing party status" if it cannot show that it received "at least some relief on the merits of [its] claim." Hewitt v. Helms, 482 U.S. 755, 760, 107 S.Ct. 2672, 2675, 96 L.Ed.2d 654 (1987). In Hewitt the Court discussed what would constitute having "prevailed" within the context of a declaratory judgment action: "if the defendant, under pressure of the lawsuit, alters his conduct (or threatened conduct) towards the plaintiff that was the basis for the suit, the plaintiff will have prevailed." Id. at 761, 107 S.Ct. at 2676.
 
 
 17
 Lear Siegler was granted no relief in its underlying bid protest claim and its efforts resulted in no change in bid protest procedures. There is no evidence that this lawsuit prompted the government's decision to comply with the CICA and, even if it had, Lear Siegler has made no showing of how the grant of summary judgment to the Senate provided it with anything more than psychic relief. In the absence of a showing of tangible benefit, the Supreme Court has held that "a favorable judicial statement of law in the course of litigation that results in judgment against the plaintiff does not suffice to render him a 'prevailing party.' " Id. at 763, 107 S.Ct. at 2677.
 
 
 18
 We therefore hold that Lear Siegler does not qualify as a prevailing party under the EAJA. Part III of the panel opinion is withdrawn, and the case is remanded to the district court with directions to vacate the award of attorney's fees.