FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA

—————————————————

No. 1D2026-0145

—————————————————

SECRETARY OF STATE CORD
BYRD,

    Appellant/Cross-Appellee,

    v.

SMART AND SAFE FLORIDA, et al.,

    Appellees/Cross-Appellant.

—————————————————

On appeal from the Circuit Court for Leon County.
Jonathan E. Sjostrom, Judge.

January 23, 2026

ROWE, J.

    Smart & Safe Florida (SSF) is a political committee sponsoring Initiative Petition 25-01 to amend Florida's Constitution to allow for the "Adult Personal Use of Marijuana." For the proposed amendment to be placed on the ballot for the 2026 general election, SSF must obtain at least 880,062 petitions signed by duly registered and qualified electors, and verified as valid by the County Supervisors of Elections. Supervisors must verify and report petitions with valid signatures to the Florida Division of Elections by February 1, 2026. The Secretary of State must then

determine whether the constitutionally required number and distribution of signatures have been obtained to allow the proposed amendment to be placed on the ballot. As of the date of this opinion, 714,888 signatures have been verified and reported on the Division's website.[1] With eight days remaining, SSF still needs 165,174 valid and verified signatures.[2]

SSF contends that approximately 70,000 petitions designated as invalid should be counted towards the number of signed petitions required for ballot placement. The invalidated petitions fall into two categories. The first category includes 41,894 petitions signed by voters designated as "inactive" under section 98.065(4)(d), Florida Statutes. These petitions were designated invalid in accordance with written directions the Division e-mailed to Supervisors on December 23, 2025 (inactive voter directive).

The second category includes 28,752 petitions collected by non-United States citizens or non-Florida residents working for SSF—despite a statute enacted during the 2025 legislative session that prohibits such persons from collecting petitions: section 100.371(4)(b)3., Florida Statutes (2025). Shortly after the statute became effective, a federal district court entered a preliminary injunction enjoining the Division from enforcing the statute. *See Fla. Decides Healthcare, Inc. v. Byrd*, 790 F. Supp. 3d 1335, 1344 (N.D. Fla. 2025). But just two months later, the Eleventh Circuit vacated the preliminary injunction. *See Fla. Decides Healthcare,*

---

[1] Fla. Dep't of State, Div. of Elections, INITIATIVES/AMENDMENTS/REVISIONS DATABASE, https://constitutionalinitiatives.dos.fl.gov/Home/InitDetail?account=83475&seqnum=3 (last visited January 23, 2026).

[2] SSF sponsored a similar amendment for placement on the 2024 ballot—22-05 "Adult Personal Use of Marijuana." There, 1,033,770 signatures were verified for placement on the ballot—far more than the 891,523 signatures required. Even so, the amendment failed at the ballot box, falling short of the sixty-percent threshold of affirmative votes required to amend the Florida Constitution. Art. XI, § 5(e), Fla. Const.

2

*Inc. v. Fla. Sec'y of State*, No. 25-12370, 2025 WL 3738554, at *1 (11th Cir. Sept. 9, 2025).

After the injunction was vacated, the Division e-mailed written directions to Supervisors on September 11, 2025 (non-resident-circulator directive), instructing them to designate as invalid petition forms collected by a non-citizen or non-resident petition circulator during the period the injunction was in effect—July 8, 2025, through September 9, 2025 (the injunction period).

SSF sued Secretary of State Cord Byrd and Leon County Supervisor of Elections Mark Earley[3] in circuit court, seeking emergency declaratory and injunctive relief to compel the validation and verification of the 70,646 petitions in dispute. SSF argued that the inactive voter directive was unlawful because no Florida law required voters to be listed as active to sign a petition. As for the non-resident-circulator directive, SSF contended that the petitions collected by its non-resident circulators during the injunction period were lawfully collected.

Both parties moved for summary judgment, agreeing that there was no genuine issue of material fact in dispute. After a hearing on January 15, 2026, the circuit court granted final summary judgment for SSF on the inactive voter directive, declaring the directive "unlawful, void ab initio, and of no effect." The court then enjoined Supervisor Earley from invalidating the approximately 606[4] otherwise valid petitions under the inactive voter directive, and compelled Earley to report all petitions subject to the directive that had otherwise been verified as valid to the Division within the required statutory time limit.

---

[3] SSF did not file suit against or name as defendants in the action below the remaining sixty-six supervisors of elections.

[4] SSF contended in its motion for summary judgment that, in Leon County, 606 petitions were subject to invalidation under the inactive voter directive and 267 petitions were subject to invalidation under the non-resident-circulator directive.

3

But on the non-resident-circulator directive, the court denied all relief to SSF. The Secretary filed a notice of appeal, and SSF filed a notice of cross-appeal that same day—January 15, 2026. Supervisor Earley did not appeal. The Secretary's notice triggered an automatic stay of the circuit court's order. *See* Fla. R. App. P. 9.310(b)(2). But the next day, the circuit court entered an order vacating the stay. The automatic stay was reinstated by this Court on January 23, 2026.

SSF also filed a notice under Florida Rule of Appellate Procedure 9.125(c) suggesting that the circuit court's order be certified to the Florida Supreme Court for immediate resolution. The Secretary filed a response in opposition. On January 18, this Court declined certification and set an expedited briefing schedule, with the last brief due on January 22, 2026.

The parties have served the briefs in the appeal and the cross-appeal in accordance with the expedited briefing schedule. We commend the parties and their counsel for their diligence and professionalism in meeting the demands of the expedited schedule. Having considered the parties' arguments and the governing law, we affirm the circuit court's order denying relief to SSF on the non-resident-circulator directive. But we reverse the portion of the order declaring the inactive voter directive to be unlawful, and vacate the injunction entered against Supervisor Earley.

## I.

When a declaratory judgment rests on a question of law, our review is de novo. *Barnett v. Hibiscus Homeowners Ass'n, Inc.*, 344 So. 3d 560, 565 (Fla. 1st DCA 2022). Questions of law, such as the interpretation of a statute, are also subject to de novo review. *Davis v. Big Bend Hospice, Inc.*, 419 So. 3d 272, 273–74 (Fla. 1st DCA 2025).

## II.

This is an appeal from a circuit court order purporting to enter a declaratory judgment under section 86.011, Florida Statutes. Chapter 86, the Declaratory Judgment Act, authorizes trial courts to render declaratory judgments on the existence, or non-existence,

of any immunity, power, privilege, or right. § 86.011, Fla. Stat. But "[b]efore a court may exercise its jurisdiction to grant declaratory relief, some justiciable controversy must exist between adverse parties that needs to be resolved." *Riverside Ave. Prop., LLC v. 1661 Riverside Condo. Ass'n, Inc.*, 325 So. 3d 997, 1000 (Fla. 1st DCA 2021). To be entitled to a declaratory judgment, the dispute between the parties must be based on "*some definite and concrete assertions of right*, the contest thereof involving the legal or equitable relations of parties having adverse interests with respect to which the declaration is sought." *See Apthorp v. Detzner*, 162 So. 3d 236, 241 (Fla. 1st DCA 2015) (citations omitted) (emphasis supplied). What then was the definite and concrete assertion of right at issue in SSF's complaint? Put differently, what right did SSF assert under the Secretary's written directions to the Supervisors? To answer these questions, we look at the complaint and at the statutory duties and responsibilities of the Supervisors and the Secretary.

The Supervisors are county officers. *See* Art. VIII, § 1(d), Fla. Const. The Legislature has provided by general law the duties of the Supervisors. *See* § 98.015, Fla. Stat. Among those duties and relevant here is their statutory duty to maintain accurate and current lists of voters through general registration list maintenance. *See* § 98.065(1), Fla. Stat. (requiring supervisors "to protect the integrity of the electoral process by ensuring the maintenance of accurate and current voter registration records in the statewide voter registration system"). As part of the maintenance program, Supervisors "must designate as inactive all voters who have been sent an address confirmation final notice and who have not returned the postage prepaid, preaddressed return form within 30 days or for which the final notice has been returned as undeliverable." § 98.065(4)(d), Fla. Stat.

Once designated as inactive, a voter must take affirmative action to be restored to active voter status. The Legislature has specified three and only three ways for voters to change their status from inactive to active. The voter may (1) "updat[e] his or her registration and confirm[] his or her current address of legal residence," (2) "request[] a vote-by-mail ballot and confirm[] his or her current address of legal residence," or (3) "appear[] to vote and confirm[] his or her current address of legal residence."

5

§ 98.065(4)(d), Fla. Stat. The failure to take one of these actions by the second general election after being placed on the inactive list results in the removal of the voter's name from the statewide voter registration system. § 98.065(4)(d), Fla. Stat. And for a voter to be restored to the statewide voter registration system, the voter must re-register with the supervisor of elections. § 98.065(4)(d), Fla. Stat.

The list maintenance procedures are relevant to ballot initiatives in at least two respects. First, a supervisor may not verify that a signature on a petition is valid unless "[t]he purported voter is, at the time he or she signs the form and at the time the form is verified, a duly qualified and registered voter in the state." § 100.371(14)(c)4., Fla. Stat. And second, "[n]ames on the inactive list may not be used to calculate the number of signatures needed on any petition." § 98.065(4)(d), Fla. Stat.

Relevant to the Secretary's non-resident-circulator directive, the Supervisors may not count as valid a petition submitted by an ineligible or unregistered petition circulator. Because of the ongoing problems with fraud[5] in the initiative petition process, the Legislature enacted additional measures with the intent to deter, prevent, and penalize fraudulent activity. *See* Ch. 25-21, § 1, at 6, Laws of Fla. Governor DeSantis approved the Committee Substitute for House Bill 1205 (HB 1205), which amended initiative petition laws to ensure ballot integrity and a valid election process. *See* Ch. 25-21, Laws of Fla.

---

[5] Following enactment of the statute, the Florida Office of Elections Crimes and Security reported that its investigations indicated that over one hundred SSF petition circulators committed criminal activity, at least seventeen petition circulators were arrested, hundreds of criminal investigations remained open, and additional arrests were expected in 2025. *See* 2024 OECS Annual Report to the Legislature (Jan. 15, 2025) at pages 3-19. Among the violations reported in the past twelve months, SSF self-reported about fifty instances of suspected fraud perpetrated by its petition circulators from March 2025 to December 2025.

In light of the ongoing fraudulent activity, the Legislature imposed a requirement that circulators must be United States citizens and Florida residents. *Id.* § 6 at 11 (codified at § 100.371(4)(b), Fla. Stat. (2025)). It also required that any petition "submitted by an ineligible or unregistered petition circulator must be invalidated and may not be counted toward the number of necessary signatures for placement on the ballot." *Id.* § 6, at 18 (codified at § 100.371(14)(h), Fla. Stat. (2025)). Finally, the Legislature imposed a moratorium on verifying petitions between July 1 and September 30, 2025. *Id.* § 20, at 28.

The Secretary of State is an officer of the executive branch. § 15.01, Fla. Stat. The Florida Legislature has designated the Secretary as the chief election officer. § 97.012, Fla. Stat. Under Florida's Election Code (Chapters 97 to 106 of the Florida Statutes), the Secretary is charged with obtaining and maintaining "uniformity in the interpretation and implementation of the election laws." § 97.012(1), Fla. Stat. The Legislature has authorized the Secretary to promulgate "by rule uniform standards for the proper and equitable interpretation and implementation of the requirements of [the Code]." § 97.012(14), Fla. Stat. Further, the Secretary may "[b]ring and maintain such actions at law or in equity by mandamus or injunction to enforce the performance of any duties of a county supervisor of elections or any official performing duties." § 97.012(14), Fla. Stat. Finally, and relevant here, the Secretary may "[p]rovide written direction and opinions to the supervisors of elections on the performance of their official duties" under the Code. § 97.012(16), Fla. Stat.

Turning now to SSF's complaint, SSF pleaded two counts. First, SSF sought a declaration that the inactive voter directive was "unlawful and void ab initio." And second, SSF sought a declaration that the non-resident-circulator directive was "unlawful and void ab initio." SSF also sued to enjoin Supervisor Earley from following either directive.

But simultaneously with seeking a declaration of rights as to the Secretary's e-mail directives, SSF also alleged—on page three of its complaint—that the Secretary's directives to the Supervisors are "nothing more than non-binding requests that are unlawful and contrary to express statutory dictates." In its memorandum of

7

law in response to the Secretary's summary judgment motion, SSF described the directives as "the whims of a bureaucrat" and as "void and unenforceable." In its initial brief, SSF similarly characterized the directives, stating that they "lack the force of law" and cannot be considered advisory opinions under section 106.23(2), Florida Statutes.

Assuming without deciding that, as SSF contends, the Secretary's e-mail directions amount only to "non-binding requests," the directions cannot then create a right that can be declared. *Cf. Askew v. City of Ocala*, 348 So. 2d 308, 310 (Fla. 1977) (holding that a lawsuit challenging an advisory opinion of the Attorney General did not present a justiciable controversy in an action for declaratory relief). And SSF has identified no source of law from which a right or duty between SSF and the Secretary can be identified with respect to the Secretary's authority to provide written directions to the Supervisors.

### III.

We now turn to the Secretary's appeal from the circuit court's order declaring the inactive voter directive "unlawful, void ab initio, and of no legal effect." SSF's complaint never alleged the existence, or non-existence, of any immunity, power, privilege, or right that the court could adjudicate in a declaratory judgment action. And so, we are left to review on appeal a circuit court order purporting to enter a judgment declaring unlawful the Secretary's written directions e-mailed to the Supervisors—or, as SSF alleges in its complaint—the Secretary's non-binding requests to the Supervisors. SSF essentially sought judicial advice different from the advice provided by the Secretary in his written directions to the Supervisors. And thus, based on the complaint, the circuit court's declaration that the Secretary's written directions were "unlawful and void ab initio" was not a binding adjudication of any right. *See Hewitt v. Helms*, 482 U.S. 755, 761 (1987) ("The real value of the judicial pronouncement—what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*.").

The Secretary argues that the circuit court reversibly erred when it declared that the Secretary's written directions to the

8

Supervisors were "unlawful, void ab initio, and without legal effect." We agree. There was nothing unlawful about the Secretary's providing written directions to the Supervisors on how to perform their official duties to verify petitions submitted by inactive voters. Rather, the Secretary had specific statutory authority to provide directions to Supervisors on how they should perform their official duties. § 97.012(16), Fla. Stat.

For this reason, we reverse the circuit court's order declaring unlawful the Secretary's written direction to the Supervisors regarding inactive voters, and we vacate the injunction entered against Supervisor Earley.

IV.

We turn now to the cross-appeal. SSF argues that the trial court reversibly erred when it denied all relief on SSF's complaint for declaratory and injunctive relief on the non-resident-circulator directive. SSF contends that the Secretary's written directions to the Supervisors as to the validity of the petitions collected by the non-resident circulators were inconsistent with the governing provisions of the Florida Election Code.

We affirm the order on appeal but do so on other grounds. *See Robertson v. State*, 829 So. 2d 901, 906 (Fla. 2002) ("[T]he 'tipsy coachman' doctrine[] allows an appellate court to affirm a trial court that 'reaches the right result, but for the wrong reasons' so long as 'there is any basis which would support the judgment in the record.'" (quoting *Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 644 (Fla. 1999))).

The circuit court correctly declined to provide declaratory relief to SSF. SSF alleged in its complaint and argued on appeal that the Secretary's written directives were non-binding and without legal effect. As we have explained, the Secretary had statutory authority to issue directions to the Supervisors. Beyond that, SSF identified no right to be adjudicated regarding the Secretary's e-mail directions. Instead, SSF sought an advisory opinion from the court in the guise of a request for a declaratory judgment. The circuit court did not err when it denied all relief on SSF's complaint for declaratory relief on the non-resident circulator directive.

9

AFFIRMED in part; REVERSED in part.

KELSEY and LONG, JJ., concur.

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____

Ashley E. Davis, General Counsel and Bilal Ahmed Faruqui, Deputy General Counsel, Florida Department of State, Tallahassee; and Jeffrey Paul DeSousa, Acting Solicitor General, Jason J. Muehlhoff, Chief Deputy Solicitor General, and Samuel F. Elliott, Deputy Solicitor General, Tallahassee, for Appellant/Cross-Appellee.

Glenn Burhans, Jr. and Hannah E. Murphy of Stearns Weaver Miller Weissler Alhadeff & Sitterson P.A., Tallahassee, for Appellee/Cross-Appellant Smart & Safe Florida.

Mark Herron of Messer Caparello, P.A., Tallahassee, for Appellee Mark Earley, in his official capacity as Supervisor of Elections of Leon County.