The **ASSOCIATION FOR RETARDED CITIZENS OF CONNECTICUT, INC.,** William Brilla, by his parents and next friends, Mr. and Mrs. Anthony Brilla, Ann Marie Olenick, by her mother and next friend, Mrs. Robert Olenick, Marie Jennie Fortin, by her father and next friend George Fortin, Cheryl Eaton, by her mother and next friend, Ruth Eaton, Allan Riccardi, by his mother and next friend, Helen Riccardi, David Meli, by his mother and next friend, Alicia Meli, Joseph Rittlinger, by his parents and next friends, Mr. and Mrs. Adam Rittlinger, Gary Rotonto, Stephen Ogren, Tina Sandahl, by her parents and next friends, Mr. and Mrs. Sandahl, Philip Teitelman, by his parents and next

friends, Mr. and Mrs. Samuel Teitelman, Lisa French, by her mother and next friend, Carolyn Bullard, Stephen Benson, by his father and next friend, Robert Benson, Mansfield Parents Association, Plaintiffs–Appellants,

v.

Gareth THORNE, Commissioner, Connecticut Department of Mental Retardation, Defendant–Appellee,

Commissioner, Connecticut Department of Social Services, Commissioner, Connecticut Department of Children and Families, Commissioner, Connecticut Department of Public Health and Addiction Services, Defendants,

New England Health Care Union, District 1199, Intervenor,

United States of America, Litigating Amicus Curiae.

No. 1443, Docket 94–9043.

United States Court of Appeals, Second Circuit.

Argued May 15, 1995.

Decided Oct. 6, 1995.

David C. Shaw, Hartford, CT, for Plaintiffs–Appellants.

James P. Welsh, Assistant Attorney General, Hartford, CT, (Richard Blumenthal, Atty. Gen. for the State of Conn.), for Defendant–Appellee.

Before: ALTIMARI, MAHONEY, and WALKER, Circuit Judges.

WALKER, Circuit Judge:

Plaintiffs-appellants, twelve individuals and the Association for Retarded Citizens of Connecticut, Inc. ("ARCC"), appeal from a ruling on a Motion for Reconsideration (F. Owen Eagan, *Magistrate Judge* ),[1] finding that, contrary to the district court's prior ruling, plaintiffs could not be awarded a portion of the attorneys' fees they sought to recover under the Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988.

## BACKGROUND

The facts of this case are set forth in detail in *Association of Retarded Citizens v. Thorne*, 30 F.3d 367 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 727, 130 L.Ed.2d 631 (1995), familiarity with which is presumed. We summarize only those facts relevant to this appeal.

The litigation underlying this case stems from a lawsuit filed by twelve individuals and ARCC seeking classwide relief from conditions that allegedly violated the constitutional and federal statutory rights of roughly 1200 mentally retarded former and current residents of Mansfield Training School ("MTS"). *Id.* at 368. The defendants included, among others, the Commissioners of the Department of Mental Retardation ("DMR") and the Department of Health Services ("DHS"). Four years into the litigation, the district court dismissed DHS from the suit, a decision which plaintiffs did not challenge. *Id.*

In 1984, the parties entered into a consent decree, which the district court approved, providing for an interdisciplinary planning process to identify and address the needs of each class member. *Id.* Six years later, following continued development of the policies to address the needs of the class members, the magistrate judge, to whom the case was referred, issued a Final Order. The Order included portions of the consent decree as well as new provisions based on settlements reached in the interim. *Id.* at 369. The provision relevant to this appeal was designed to protect class members from discriminatory Do Not Resuscitate ("DNR") Orders. Specifically, the DMR was to en-

force its Medical Advisory ("Advisory"), which set guidelines for the review of DNR Orders proposed for DMR clients and to ensure that the Orders were not based on a client's mental disabilities. *Id.*

In July 1992, because several class members were transferred to health care facilities licensed by DHS and because DHS allegedly did not abide by the Advisory, plaintiffs moved to have DHS joined as a defendant and sought a preliminary injunction requiring DHS and the party defendants "to implement the Advisory in all licensed health care facilities in the state." *Id.* The district court, adopting and affirming the recommendations of the magistrate judge, joined DHS, pursuant to the All Writs Act, 28 U.S.C. § 1651(a), on the basis that the joinder was "essential to ensure that the protections set forth in the Final Order for mentally retarded individuals who are in the care of the state are not forfeited in those cases when ... DMR[ ] chooses to place a class-member in a facility licensed by ... DHS." *Id.* at 370 (quotation omitted). The court also found that DHS had violated the Final Order as well as the class members' due process rights and therefore granted plaintiffs' motion for preliminary injunction. *Id.* In September, 1993, DHS alone appealed from this judgment.

In April, 1994, while the appeal was pending, plaintiffs filed a motion, pursuant to 42 U.S.C. § 1988, for reimbursement of attorneys' fees and costs incurred from February 1, 1993 through March 21, 1994, including those related to the DHS appeal. On July 22, 1994, the district court granted the motion in part, ordering the defendants to pay $104,870.20 in attorneys' fees.

Three days later, we reversed the district court's decision to join DHS in the case and vacated the judgment on the basis that the district court improperly joined DHS and therefore "lacked jurisdiction to determine whether DHS committed any constitutional violations." *Thorne*, 30 F.3d at 371. On August 9, 1994, as a result of our decision, DMR filed a Motion for Enlargement of Time to Move for Reconsideration, which the

---

1. The parties consented to proceed before a United States Magistrate Judge.

district court granted. DMR and plaintiffs filed Motions for Reconsideration on August 19 and August 26, respectively. On September 7, the magistrate judge concluded that, based on our reversal of the district court's previous decision, plaintiffs were "not a 'prevailing party' entitled to recover fees from [DHS]" since no legal decision had altered the "legal relations of the parties to the plaintiff's direct benefit." Thus, the court concluded that it could not award attorneys' fees for the time spent on the DHS appeal. Plaintiffs appeal from that ruling.

## DISCUSSION

Plaintiffs raise three claims on appeal: 1) the district court erred in concluding that plaintiffs were not a "prevailing party" as to the DHS portion of the litigation; 2) the district court should not have reconsidered its prior ruling awarding attorneys' fees to plaintiffs because DMR's reconsideration motion was untimely; and 3) the district court abused its discretion in setting too low a rate for attorneys' fees.

### I. "Prevailing Party"

■ "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quotation omitted). The district court concluded that in order for ARCC to be considered a prevailing party in the DHS litigation it "must be able to point to a resolution of a dispute which materially altered the legal relationship between itself and the defendant." *Connecticut Ass'n for Retarded Citizens, Inc. v. Thorne*, No. H–78–653, slip op. at 4 (D.Conn. Sept. 7, 1994) (ruling on Motions for Reconsideration) (citing *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792, 109 S.Ct. 1486, 1493–94, 103 L.Ed.2d 866 (1989); *Farrar v. Hobby*, 506 U.S. 103, ——, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992)). Thus, the court concluded, even though the litigation "prompted [DHS] to make significant changes in its procedures, no material alteration of the legal relationship between the plaintiffs and [DHS] has resulted." *Id.*

ARCC argues first that *Plyler v. Evatt*, 902 F.2d 273 (4th Cir.1990), should guide the outcome here. In *Plyler*, the Fourth Circuit considered whether plaintiffs who had prevailed in litigation leading to a consent decree, but who unsuccessfully opposed a motion to modify the decree, *id.* at 279, could receive attorneys' fees for the opposition to the motion. The court concluded that the issues in the later proceedings were sufficiently related to the legal issues of the original litigation, since the motion only sought to challenge a specific provision of the decree. *Id.* at 280–81. Since "the plaintiffs had received the essence of their bargain," and since "plaintiffs' counsel were under [a] clear obligation to make the defensive effort," the Fourth Circuit concluded that the plaintiffs were properly awarded attorneys' fees as a "still" prevailing party. *Id.* at 281.

Plaintiffs here argue that they achieved "significant overall success in preserving the fruits" of the Final Order's requirement that the DMR's Advisory provision be enforced and implemented, thereby receiving the essence of their bargain. In addition, they claim that they "had no option but to vigorously enforce" that provision since DHS was in a position to render the Final Order "meaningless." Consequently, plaintiffs contend, the appeal was not a separate proceeding unrelated to the prior litigation, but was closely intertwined with its general efforts to secure and retain protections from the Final Order.

Plaintiffs also argue that they prevailed under the "catalyst" theory because the litigation effected significant changes in DHS's behavior, consistent with the relief it sought through litigation. Under this theory, a plaintiff may recover attorneys' fees if the litigation "produces voluntary action by the defendant that affords the plaintiff all or some of the relief that he sought through a judgment." *Hewitt v. Helms*, 482 U.S. 755, 760, 107 S.Ct. 2672, 2676, 96 L.Ed.2d 654 (1987); *see also LaRouche v. Kezer*, 20 F.3d 68, 71 n. 4 (2d Cir.1994); *Rose v. Heintz*, 806 F.2d 389, 391 (2d Cir.1986). We are not persuaded.

■ Recent Supreme Court cases have stated that the key to determining whether a party prevails is whether the litigation resulted in an alteration of the legal relationship between the parties. *See, e.g., Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 791–92, 109 S.Ct. 1486, 1493–94, 103 L.Ed.2d 866 (1989). The "plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought . . . or comparable relief through a consent decree or settlement." *Farrar,* 506 U.S. at ——, 113 S.Ct. at 573. In losing on the joinder question and therefore on the question whether DHS committed any constitutional violations, no such alteration of the legal relationship between plaintiffs and DHS occurred.

■ More important, even if we were to agree that the catalyst theory applied for the reason that the plaintiffs "prompt[ed DHS] to make significant changes in its procedures," *Thorne,* No. H–78–653, slip op. at 4 (ruling on Motions for Reconsideration), the district court was barred, for jurisdictional reasons, from awarding the fees in question. In *W.G. v. Senatore,* 18 F.3d 60 (2d Cir.1994), reviewing the district court's denial of attorneys' fees and costs following its dismissal of a complaint for lack of subject matter jurisdiction, we held that "[w]here there is no subject matter jurisdiction to proceed with the substantive claim, as a matter of law, '[t]hat lack of jurisdiction bar[s] an award of attorneys fees under section 1988.'" *Id.* at 64 (quoting *Keene Corp. v. Cass,* 908 F.2d 293, 298 (8th Cir.1990)). Because the district court lacked subject matter jurisdiction, we concluded that it had no choice but to deny the application for attorneys' fees. *Id.* at 65.

Here, the district court initially awarded the fees based on the DHS appeal in the belief that it had jurisdiction to grant a preliminary injunction as to DHS. Just days later, we reversed the district court's underlying decision for lack of jurisdiction over DHS on the ground that DHS, not a party to the original consent decree, had been improperly joined in the preliminary injunction proceeding. 30 F.3d at 371. Under *Senatore,* therefore, it was appropriate for the district court to reconsider and reverse its prior award of the attorneys' fees and costs. Since the district court lacked jurisdiction to determine the claims against DHS, it no longer had power to award attorneys' fees based on the DHS appeal to ARCC. *Cf. Senatore,* 18 F.3d at 64 (When the district court lacks subject matter jurisdiction over a complaint, "it would be inappropriate to classify the district court's denial [of attorneys' fees] as an exercise of discretion at all [since] the district court's denial was compelled by time-honored principles expressing the limitations of subject matter jurisdiction in the federal courts.").

■ Finally, we note that plaintiffs' motion sought to recover attorneys' fees from the party defendants, who no longer included DHS. Even assuming that plaintiffs were held to have prevailed as to DHS under the catalyst theory, there is no justification to order anyone to pay the fees other than DHS, over whom the district court had no jurisdiction. There is no basis in law or logic for a prevailing party to recover attorneys' fees from a party other than the entity whose behavior has been positively influenced by litigation and against whom the plaintiffs have prevailed. *See Hewitt,* 482 U.S. at 760–61, 107 S.Ct. at 2675–76 (noting that fees may be awarded under 42 U.S.C. § 1988 as part of the judgment against the defendant because the litigation "produces voluntary action by the *defendant* that affords the plaintiff all or some of the relief he sought through a judgment" (emphasis added)); *Rose,* 806 F.2d at 391 (finding that attorneys' fees should be awarded based on the catalyst theory since the *defendant* vindicated plaintiffs' rights in response to the litigation). Thus when, as in this case, the party from whom fees are sought never "purported to represent [the entity whose behavior was influenced by litigation] or its interests," *Thorne,* 30 F.3d at 372, the district court may not order that party to pay attorneys' fees.

We are not persuaded by plaintiffs' claims that fees relating to the litigation against DHS are justified because DMR also took cooperative actions benefitting the class as a result of this litigation. The fees incurred with respect to DMR were properly awarded,

and the benefits to plaintiffs from the changed legal relationship and any catalyst effect as between plaintiffs and DMR were accounted for in that award.

Therefore, because at best plaintiffs could only be said to have prevailed as to DHS under the catalyst theory, and because the court lacked jurisdiction over DHS, we hold that they are not a "prevailing party" and therefore should not receive attorneys' fees based on the DHS appeal.

## II. Application of Federal and Local Time Bars

Plaintiffs argue alternatively that the district court's attorneys' fee reduction based upon a motion for reconsideration is barred because the motion was untimely under Federal Rule of Civil Procedure 59(e) and Local Rule of the District of Connecticut 9(e). These rules provide that a judgment cannot be altered, amended, or reconsidered after ten days following the entry of judgment. Since DMR's Motion for Reconsideration was filed on August 19, 1994, more than ten days after the July 22, 1994 decision to award attorneys' fees to plaintiffs, ARCC argues that the court was prevented from reconsidering the award. We disagree.

### A. Federal Rules of Civil Procedure

We address the proper application of each rule separately. First we note that the motion for reconsideration did not refer to a specific Federal Rule of Civil Procedure. Nothing in the lower court's opinion indicates that it viewed the motion as arising under Rule 59(e).

■ Where there is no indication which Federal Rule of Civil Procedure applies, "the courts have considered [a] motion [for modification of judgment to be] either a Rule 59(e) motion to alter or amend a judgment, or a Rule 60(b) motion for relief from a judgment or order." *In re Burnley,* 988 F.2d 1, 2 (4th Cir.1992). While Rule 59(e) covers a broad range of motions, including motions for reconsideration, 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2810.1, at 122–23 (2d ed. 1995), we construe the motion before us

as within the purview of Rule 60(b) for two reasons. First, Rule 60(b)(5) addresses exactly the circumstances before us: it allows for relief from "a final judgment, order, or proceeding" on the basis that "a prior judgment upon which it is based has been reversed or otherwise vacated." Therefore, the motion would have been correctly granted under Rule 60(b)(5). Moreover, because the motion would have been untimely under Rule 59, we find Rule 59(e) to be inapplicable. *See Burnley,* 988 F.2d at 3; *Campbell v. Bartlett,* 975 F.2d 1569, 1581 n. 15 (10th Cir.1992) ("Motions served within 10 days of judgment ordinarily will fall under Rule 59(e), while motions served later fall under Rule 60(b)." (quotations omitted)); *Sternstein v. Italia–Societa Per Azioni Di Navigazione–Genoa,* 275 F.2d 502, 503 (2d Cir. 1960) (per curiam).

■ Rule 60(b)(5) only requires that the motion be made "within a reasonable time." Since the time lag of less than a month between the judgment and the motion for reconsideration was not unreasonable, DMR's motion for reconsideration was not time-barred under the Federal Rules of Civil Procedure.

### B. Local Rules

At first glance, it might appear that Local Rule 9(e) barred DMR's motion as untimely. That Rule requires that motions for reconsideration "be filed and served within ten days of the filing of the decision or order from which such relief is sought." The Local Rules do not describe the circumstance in which an enlargement of time for a motion of reconsideration may be granted.

■ Nevertheless, in *Somlyo v. J. Lu–Rob Enters.,* 932 F.2d 1043 (2d Cir.1991), we held that a district court had discretion to "depart from the letter of [a] local rule," *id.* at 1048, if adherence to the rule would "cause an unjust result," *id.* at 1049. Following the reasoning of other circuits, we held that district courts have

inherent power to decide when a departure from its Local Rules should be excused or overlooked.

The district court's inherent discretion to depart from the letter of the Local Rules extends to every Local Rule regardless of whether a particular Local Rule specifically grants the judge the power to deviate from the Rule.

*Id.* at 1048 (citations omitted).

■ Based on the rationales for granting Rule 60(b) relief in this case, we find that the district court acted within its discretion in granting the motion for enlargement of time and allowing the motion for consideration to be considered even though it was filed "late" according to Rule 9(e). To hold otherwise would lead to the unjust result that DMR would be forced to pay attorneys' fees on the basis of DHS's actions, even though the district court had no jurisdiction over DHS.

III. Rate of Attorneys' Fees

■ Finally, we address briefly ARCC's claims that the court abused its discretion in setting a rate of $185 per hour without providing a clear explanation of the basis for this rate. This claim deserves little attention. A "district court has discretion in determining the amount of a fee award," *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941, and "appellate review of the district court's decision regarding attorney's fees is narrow," *Senatore,* 18 F.3d at 63. In addition, as ARCC acknowledges, a judge may "rely in part on [his] own knowledge of private firm hourly rates in the community," *Miele v. New York State Teamsters Conference Pension & Retirement Fund,* 831 F.2d 407, 409 (2d Cir.1987).

■ In this case, the district court acted within its discretion, in concluding, based on its "own knowledge of the prevailing market rates," and its previous determinations of a "reasonable hourly rate," that the proper hourly rate should be $185. That plaintiffs offered affidavits suggesting that the rate should be higher simply does not demonstrate that the district court abused its discretion by failing to provide a "clear explanation" for its decision.

CONCLUSION

For the foregoing reasons, we affirm the district court's judgment.