**Alvin NASH, et al., and African American Voting Rights Legal Defense Fund, Inc., et al., Plaintiffs,**

**v.**

**Roy D. BLUNT, in his capacity as Missouri Secretary of State, et al., Defendants,**

**and**

**Thomas P. Stoff, et al., and Melvin Weems, et al., Intervenor Defendants.**

**No. 91–0840–CV–W–2.**

United States District Court, W.D. Missouri, W.D.

Jan. 22, 1992.

Edward L. Pendleton, Kansas City, Mo., for plaintiffs Alvin Nash and Earl Pitts.

Elbert A. Walton, Jr., Elbert A. Walton, Jr., P.C., St. Louis, Mo., for plaintiff African American Voting Rights Legal Defense Fund, Inc.

Veronica Jongenelen, Benson & McKay, Kansas City, Mo., for intervenors defendants Melvin Weems, Myron Paris, John Lodwick, Jr., Jack Holland, Richard J. DeCoster, David Childers and Sharon Q. Carpenter.

Patrick J. Connaghan, St. Louis, Mo., Michael D. Fitzgerald, Van Osdol, Magruder, Erickson & Redmond, P.C., James M. Smart, Jr., Crews, Smart, Whitehead, Brownlee & Waits, Kansas City, Mo., Steven W. Garrett, Curtis, Oetting, Heinz, Garrett & Soule, P.C., Clayton, Mo., for intervenors defendants Thomas P. Stoff, Neil Molloy, Patrick Dougherty, Francis R. Brady, Henry Bufkins, Matt O. O'Neill, Gail Chatfield, Charles Dooley and Ron Auer.

Maryella Kelly, St. Charles, Mo., for intervenor defendant Richard P. Dorsey.

Paula J. Carter, pro se.

Russell Goward, pro se.

Assistant Atty. Gen. Michael L. Boicourt, Office of Missouri Atty. Gen., Jefferson City, Mo., for defendant Roy D. Blunt, in his official capacity as Secretary of State of the State of Mo.

Before FLOYD R. GIBSON, Senior Circuit Judge, SACHS, Chief District Judge, and GAITAN, District Judge.

## MEMORANDUM AND ORDER

Plaintiffs filed these consolidated voting rights cases in September 1991, challenging the House Apportionment Plan (referred to as "the official Plan") adopted the same month by the Missouri House of Represent-

atives Reapportionment Commission. Unlawful dilution of voting rights of African Americans is alleged, as the Plan applies to Jackson County (Kansas City), St. Louis City and St. Louis County. A three-judge court was duly convened.

The initial parties, African American voters and Missouri state officials, negotiated a proposed settlement, which was presented to the court informally in a transcribed conference on December 12, 1991, and thereafter filed on the 16th. Because of the urgency of prompt disposition, in that candidate filings were scheduled to begin with the Secretary of State on January 14, 1992, the court scheduled a hearing at the earliest feasible date, December 26, 1991. Thereafter the court scheduled a trial on the merits for March 1992, implicitly declining to approve the settlement proposed for reasons indicated by the judges at the hearing.[1]

The hearing date and the proposed settlement received substantial newspaper publicity. Motions to intervene as defendants were timely filed with the court, most notably by certain Democratic members of the Reapportionment Commission (the Weems intervenors) and by voters from the St. Louis area (the Stoff intervenors). Suggestions in opposition to the interventions were filed on November 22 and 25 by defendant Secretary of State and by plaintiffs, respectively. The motions to intervene were granted.

Presently before the court is a motion to reconsider the Weems intervention, filed by Governor Ashcroft and Secretary of State Blunt on December 26, 1991, together with suggestions in opposition filed the same day. The state officials rely on a legal presumption that a state officer will adequately represent the interest of all citizens of the state, and further contend that members of the Reapportionment Commission have no standing, having completed their service when the challenged Plan was filed. The other major contention as to intervention (presented by plaintiffs) is that a candidate is said to have no standing to litigate a voting rights issue. *Roberts v. Wamser*, 883 F.2d 617 (8th Cir.1989).

■ It is quite possible that members of the Reapportionment Commission have no further standing as such to intervene, but it is normal practice in reapportionment controversies to allow intervention of voters, party officials and the like, supporting a position that could theoretically be adequately represented by public officials. *See, e.g., Busbee v. Smith*, 549 F.Supp. 494 (D.D.C.1982) (three judge court) (intervention by individual defendants in litigation brought by the State of Georgia against the Attorney General for a declaratory judgment contesting a denial of preclearance); *Goddard v. Babbitt*, 536 F.Supp. 538 (D.Ariz.1982) (three judge court) (intervention by Republican State Chairman in reapportionment suit brought against Democratic state officials by Democratic State Chairman, legislators and American Indian intervenors, involving numerical equality and racial or ethnic voting rights). *See also, Lowe v. Kansas City Bd. of Election Commissioners*, 752 F.Supp. 897 (W.D.Mo.1990) (intervention of sponsors of term limitation charter amendment). Federal practice in such cases appears to be consistent with a very recent ruling of the Texas Supreme Court, holding that intervention of Republican State Senators was mandated so that "diverse interests" would be adequately represented in reapportionment

---

1. Judge Sachs expresses the further view that plaintiffs' likelihood of success should be established before interim relief is granted, when parties seek to alter scheduled election plans; and he is satisfied that this was not accomplished at the December 26 hearing. While acknowledging that persons claiming an unconstitutional partisan gerrymander have a very heavy burden, under *Davis v. Bandemer*, 478 U.S. 109, 106 S.Ct. 2797, 92 L.Ed.2d 85 (1986), before a reapportionment plan created by the legislature or some other official body can be overturned, he also expresses the view that the burden of showing no undue partisan impact probably shifts to the proponents of a redistricting plan for which affirmative judicial approval is sought. The judiciary needs assurance that it is not being used for partisan advantage. Counsel for defendant state officials asserted that he had been advised that no political advantage had been taken by persons devising the settlement proposal, but did not undertake to demonstrate that fact on December 26.

litigation brought against Democratic state officials by Hispanic voters, contending that census figures should be modified. The Texas court set aside a purported settlement plan that had been approved without giving an opportunity to proposed intervenors to litigate the issues. *Terrazas v. Ramirez,* Tex.1991, 1991 WL 269035, 1991 Tex. LEXIS 160 (December 17, 1991). As stated in the plurality opinion of Justice Hecht, "a district court cannot order a reapportionment plan for the State based upon nothing more than the agreement of the Governor, the Attorney General, and a few citizens."

In the present case the partisan lineup is the reverse of that in *Terrazas,* in that the state officials are Republicans and the Weems intervenors are Democrats, but we are satisfied the result should be the same. *See also, Seamon v. Upham,* 563 F.Supp. 396, 400 n. 4 (E.D.Tex.1983) (three judge court).

 As contended by the Missouri Attorney General, in most litigation challenging state laws it may generally be assumed that "adequate vigor and diligence" will be exercised in the defense of official enactments, and intervention by sponsors of the challenged legislation may be denied. *McLean v. State of Arkansas,* 663 F.2d 47, 48 (8th Cir.1981). There are rare instances, however, where intervention is allowed when it is contended that otherwise there may be an inadequate representation of intervenor interests. *E.g., Natural Resources Defense Council, Inc. v. New York State Dept. of Environmental Conservation,* 834 F.2d 60 (2d Cir.1987); *Sanguine, Ltd. v. United States Dept. of Interior,* 736 F.2d 1416 (10th Cir.1984). Redistricting cases seem typically to follow the exception rather than the general rule.

 In the present case it is contended that "the Republican state defendants can-

not be presumed to be adequate representatives" of the intervening Democratic voters and commissioners. The state officials contend, however, that "no such partisan political maneuvering has heretofore taken place." They do acknowledge that under the proposed settlement "slightly more white Democratic incumbents" would be "paired in the same district" than would occur under the official Plan. A considerable number of such pairings appear in the four-page tabulation of "incumbents by district," attached to the stipulation and agreement of the original parties, as filed December 16, 1991.[2]

In addition to being necessary as a check on the possible intrusion of partisan interests into these legal matters, the grants of intervention were necessary to insure this court's jurisdiction. In arriving at the proposed settlement, the parties necessarily agreed on a wide variety of factual and legal issues; for instance, the parties agreed that the proposed settlement does not violate the Constitution or the Voting Rights Act and that the court's adoption of the settlement was the best solution to this entire lawsuit. This court was (and, to some extent, is still) concerned that the parties might actually agree on many of the central issues involved in this case, thereby depriving the court of "opposing parties representing adverse interests" as required by Article III. *Financial Guar. Ins. v. City of Fayetteville,* 943 F.2d 925, 929 (8th Cir.1991). By allowing the intervenors to participate in this case, we have insured that opposing viewpoints will continue to be presented to the court.[3]

Allowance of intervention does not require a finding that the intervenors' interests have not been and will not be adequately represented by the state officials. Intervention is allowed when this "may" happen. *Trbovich v. United Mine Work-*

2. Criticism is not to be inferred. State officials are elected on party tickets and are expected to consider party benefit in such a sensitive political issue as redistricting. This supposition does support intervention, however.

3. Even if the parties' agreement on certain issues did not implicate Article III concerns, we

would still grant the motions to intervene because the intervenors' presence will aid the court in resolving the issues presented in this case. *Cf. United States Postal Serv. v. Brennan,* 579 F.2d 188, 192 (2d Cir.1978) (quoting *Spangler v. Pasadena City Bd. of Ed.,* 552 F.2d 1326, 1329 (9th Cir.1977)).

*ers,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972). We find no authority denying intervention in a situation like that at bar, except by the trial court in Texas, in a decision vacated on mandamus. *Roberts v. Wamser* is clearly distinguishable, without elaboration.

The motion to reconsider the Weems intervention will therefore be DENIED. SO ORDERED.