UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

---

No. 97-1697
(CA-92-202-BR)

---

James Arthur Pope, etc., et al,

                              Intervenors - Appellants,

        versus

Governor James B. Hunt, etc., et al,

                              Defendants - Appellees.

---

O R D E R

---

The court amends its opinion filed August 19, 1998, as follows:

On page 2, section 2, line 3 -- the judges are corrected to read as follows:  "W. Earl Britt, District Judge; James Dickson Phillips, Jr., Senior Circuit Judge, sitting by designation; Richard L. Voorhees, Chief District Judge, sitting by designation."

                              For the Court - By Direction


                              /s/ Patricia S. Connor
                                        Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

RUTH O. SHAW; MELVIN G. SHIMM;
ROBINSON O. EVERETT; JAMES M.
EVERETT; DOROTHY G. BULLOCK,
Plaintiffs,

JAMES ARTHUR POPE, a/k/a "Art";
BETTY S. JUSTICE; DORIS LAIL; JOYCE
LAWING; NAT SWANSON; RICK
WOODRUFF; J. RALPH HIXSON; AUDREY
MCBANE; SIM A. DELAPP, JR.; RICHARD
S. SAHLIE; HOWARD B. SMITH; H. M.
TYLER, a/k/a "Ted"; FERRELL L.
BLOUNT, III; H. HOWARD DANIELEY;
ANTHONY G. POSEY; RACHEL NANCY
RUMLEY,
Intervenors-Appellants,

v.                                                    No. 97-1697

GOVERNOR JAMES B. HUNT, in his
official capacity as Governor of the
State of North Carolina; DENNIS A.
WICKER, in his official capacity as
Lieutenant Governor of the State of
North Carolina and President of the
Senate; HAROLD J. BRUBAKER, in his
official capacity as the Speaker of the
North Carolina House of
Representatives; ELAINE F. MARSHALL,
in her official capacity as Secretary of
the State of North Carolina; NORTH
CAROLINA STATE BOARD OF ELECTIONS;

EDWARD J. HIGH, in his official capacity as Chairman of the North Carolina State Board of Elections; JEAN H. NELSON, in her official capacity as a member of the North Carolina State Board of Elections; LARRY LEAKE, in his official capacity as a member of the North Carolina State Board of Elections; DOROTHY PRESSER, in her official capacity as a member of the North Carolina State Board of Elections; JUNE K. YOUNGBLOOD, in her official capacity as a member of the North Carolina State Board of Elections,
Defendants-Appellees,

and

RALPH GINGLES; VIRGINIA NEWELL; GEORGE SIMKINS; N. A. SMITH; RON LEEPER; ALFRED SMALLWOOD; OSCAR BLANKS; DAVID MOORE; ROBERT L. DAVIS; C. R. WARD; JERRY B. ADAMS; JAN VALDER; BERNARD OFFERMAN; JENNIFER MCGOVERN; CHARLES LAMBETH; ELLEN EMERSON; LAVONIA ALLISON; GEORGE KNIGHT; LETO COPELEY; WOODY CONNETTE; ROBERTA WADDLE; WILLIAM R. HODGES,
Defendants.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. W. Earl Britt, District Judge; James Dickson Phillips, Jr., Senior Circuit Judge, sitting by designation; and Richard L. Voorhees, Chief District Judge, sitting by designation.
(CA-92-202-BR)

2

Argued: October 27, 1997

Decided: August 19, 1998

Before LUTTIG, Circuit Judge, CAMPBELL, Senior Circuit Judge
of the United States Court of Appeals for the First Circuit,
sitting by designation, and TRAXLER, United States District Judge
for the District of South Carolina, sitting by designation.

_____

Reversed and remanded by published opinion. Senior Judge Campbell
wrote the opinion, in which Judge Luttig and Judge Traxler joined.

_____

**COUNSEL**

**ARGUED:** James Columcille Dever, III, MAUPIN, TAYLOR &
ELLIS, P.A., Raleigh, North Carolina, for Appellants. Edwin Marion
Spears, Jr., Senior Deputy Attorney General, NORTH CAROLINA
DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appel-
lees. **ON BRIEF:** Thomas F. Ellis, Thomas A. Farr, MAUPIN, TAY-
LOR & ELLIS, P.A., Raleigh, North Carolina, for Appellants.
Michael F. Easley, North Carolina Attorney General, Tiare B. Smiley,
Special Deputy Attorney General, NORTH CAROLINA DEPART-
MENT OF JUSTICE, Raleigh, North Carolina, for Appellees.

_____

**OPINION**

CAMPBELL, Senior Circuit Judge:

This appeal arises from the denial by a majority of a three-judge
district court of attorney's fees to plaintiff-intervenors, some of whom
had actively participated in litigation successfully challenging the
constitutionality of North Carolina's 1992 congressional redistricting
legislation. We hold that, in the rather exceptional circumstances of
this case, an award of fees is warranted. In so holding, we reverse the
judgment of the district court.

3

I.

On March 12, 1992, a group of five plaintiffs from Durham, North Carolina brought an action challenging the constitutionality of North Carolina's racially gerrymandered First and Twelfth Congressional Districts. These two oddly shaped districts were created pursuant to that state's 1992 redistricting plan so as to provide for effective black voting majorities. A three-judge district court, by majority vote, dismissed the action for failure to state a claim upon which relief could be granted. See Shaw v. Barr, 808 F. Supp. 461, 469-73 (E.D.N.C. 1992), rev'd sub nom. Shaw v. Reno, 509 U.S. 630 (1993). Plaintiffs appealed to the Supreme Court. On June 28, 1993, the Supreme Court reversed and remanded. See Reno, 509 U.S. at 649.

On remand, the district court allowed a group of ten registered Republican voters residing in the Fourth, Sixth, Ninth, and Tenth Congressional Districts to join the action as permissive intervenors ("Original Intervenors"), on the condition that they adopt plaintiffs' complaint. The district court ruled expressly that all plaintiffs and Original Intervenors had standing, basing this conclusion on the fact that they were registered to vote in North Carolina congressional elections and were assigned to vote under the challenged redistricting plan at least in part because of race. See Shaw v. Hunt 861 F. Supp. 408, 426-27 (E.D.N.C. 1994), rev'd, 116 S. Ct. 1894 (1996). The court went on to hold that North Carolina's redistricting plan did not violate the Equal Protection Clause. See Hunt, 861 F. Supp. at 476.

Plaintiffs and Original Intervenors appealed to the Supreme Court. On the same day that the Supreme Court noted probable jurisdiction, see Shaw v. Hunt, 515 U.S. 1172, 1172 (June 29, 1995), the Court decided United States v. Hays, 515 U.S. 737 (1995). The Hays Court announced standing requirements different from those applied by the district court to plaintiffs and Original Intervenors in the instant case. Under Hays, parties have standing to challenge the constitutionality of a district only if they live in that district or can demonstrate by specific evidence that they "ha[ve] personally been subjected to a racial classification." Id. at 744-45. Hays cast doubt on the standing of Original Intervenors and three of the plaintiffs, because they lived outside the First and Twelfth Districts.

4

Original Intervenors proceeded to play an active role in the appeal lodged in the Supreme Court. They filed their own brief and participated in oral argument. The Court's decision, when it came down, was in their favor on the merits, holding that North Carolina's plan violated the Equal Protection Clause. See Hunt , 116 S. Ct. at 1900-01. However, following Hays, the Court also held that the three plaintiffs who resided outside the challenged districts, and all Original Intervenors, who also resided elsewhere, lacked standing to challenge the redistricting plan. Only the two plaintiffs living within the Twelfth District had standing, and so the Court limited its holding to that district. See id. at 1900. The Court nonetheless issued a supplemental order stating that "petitioners Ruth O. Shaw, et al., and James Arthur Pope, et al., recover from James B. Hunt, Jr., Governor of North Carolina, et al., Sixteen Thousand Seven Hundred Twenty dollars ($16,129.00) [sic] for their costs herein expended." Id. (order dated 6/13/97). As "James Arthur Pope, et al." are the Original Intervenors, this order awarded them costs notwithstanding their lack of standing. The Court then remanded the case to the three-judge district court for further proceedings consistent with its holding.

On July 9, 1996, after the Supreme Court's opinion in Hunt but prior to its issuance of judgment, plaintiffs and Original Intervenors jointly moved in the district court for permission to amend their complaint to add three plaintiffs from North Carolina's First Congressional District and six plaintiff intervenors from the First and Twelfth Districts. Defendant-appellee Governor James B. Hunt, Jr. (the "Governor") consented, and on July 12 the district court allowed the motion. Three days later, plaintiffs and Original Intervenors filed an amended complaint adding new plaintiffs and a second group of intervenors ("New Intervenors"). All of these persons had standing under Hays to challenge the redistricting of the First and Twelfth Districts. The relief sought in the amended complaint was identical to the relief sought in the original complaint filed in 1992.

Plaintiffs and plaintiff-intervenors (both Original and New) continued in the action. Following submissions from the parties concerning conformity with the Supreme Court's opinion, the three-judge district court enjoined North Carolina from conducting elections under the invalid redistricting plan after 1996. The court's judgment expressly

5

included all Original Intervenors and New Intervenors. The Governor did not appeal from the court's judgment, which is now final.

Plaintiffs and plaintiff-intervenors filed a motion seeking attorneys's fees, expenses and costs. The parties entered negotiations, which led to the Governor's paying the plaintiffs $425,000 for their attorneys's fees. The Governor stipulated that the same figure would constitute reasonable fees for plaintiff-intervenors, but refused to pay, arguing that neither group of plaintiff-intervenors was a "prevailing party" entitled to receive attorney's fees within the definition of the fees statute. See 42 U.S.C. § 1988(b) (Supp. 1997).**1** The stipulation provided, inter alia:

> If one or more of the plaintiff-intervenors is determined by the court to be a "prevailing party" under 42 U.S.C. § 1988, and also entitled to recover attorney's fees, costs and expenses from the time of the commencement of the action, defendants agree to pay such plaintiff-intervenors, through their counsel, reasonable attorney's fees in the amount of $425,000, plus interest from the date of these stipulations at the statutory interest rate used by the North Carolina Department of Revenue. If the court determines that none of the plaintiff-intervenors is a "prevailing party" and none is entitled to attorney's fees from the time of the commencement of the action, the plaintiff-intervenors agree that the defendants are not liable to any plaintiff-intervenors for any attorney's fees, costs or expenses incurred in this action prior to the date of these stipulations.

A majority of the three-judge district court denied plaintiff-intervenors' motion for fees. The court agreed with the Governor that Original Intervenors lack of standing prevented them from recovering fees. The court held that, even assuming arguendo that Original Intervenors were prevailing parties, they should not recover due to "special

_____

**1** Section 1988 provides, in relevant part: "In any action or proceeding to enforce a provision of 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b).

circumstances": awarding fees would put them in a better position than those plaintiffs without standing, who were precluded from recovering fees. The court went on to hold that New Intervenors could not recover fees because they had not "played the requisite significant role in producing the outcome of this case." In the alternative, the court stated that New Intervenors could recover fees only from the time of their intervention, stating that any other award "would essentially be one for the attorney, not the party. . . .[Such an award] not only fails to effectuate the purposes of § 1988, but also contravenes case law establishing that the right to attorney's fees belongs to the party, not the attorney." One judge dissented. This appeal followed.

II.

Recovery of attorney's fees by these plaintiff-intervenors depends, in the first instance, upon whether any of them qualifies as a "prevailing party" within the language of 42 U.S.C. § 1988. See footnote 1, supra. Unless they fit within this definition, plaintiff-intervenors are subject to the "American Rule" requiring each party in litigation to bear its own fees. See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 269 (1975).

The principal barrier to affording "prevailing party" status to the Original Intervenors was perceived by the district court to be their lack of Article III standing. Hence we turn to that question first. Since the issue is a purely legal one, we review it de novo.

As an initial matter, we note that persons within the generic category of plaintiff-intervenors have often been found by courts to fit within the rubric "prevailing party" for fees purposes. See, e.g., Hastert v. Illinois State Bd. of Election Comm'rs, 28 F.3d 1430, 1441 (7th Cir. 1993); Wilder v. Bernstein, 965 F.2d 1196, 1204 (2d Cir. 1992) (en banc); E.E.O.C. v. Strasburger, Price, Kelton, Martin & Unis, 626 F.2d 1272, 1273 (5th Cir. 1980); see also 2 Sheldon H. Nahmod, Civil Rights & Civil Liberties Litigation § 10:34, at 10-71 (4th ed. 1997) ("An intervening party can be a prevailing party entitled to fees [under § 1988]."); 2 Martin A. Schwartz & John E. Kirklin, Section 1983 Litigation: Statutory Attorney's Fees, § 2.2, at 15 (3d ed. 1997) ("[T]he intervenor who succeeds in litigation . . . may qualify as a prevailing party under § 1988."). This accords with the

statutory language, since intervenors, both permissive (as here) and as of right, appear in the Federal Rules under the general heading of "Parties," see Fed. R. Civ. P. 24(a) and (b), and the case law treats them as such, see Diamond v. Charles, 476 U.S. 54, 68 (1986) (stating that "intervenors are considered parties"). Further, the Senate Report issued in connection with Congress's enactment of § 1988 specifically includes intervenors among the parties who are eligible for attorney's fees as a result of their efforts to vindicate civil rights: "[i]n the large majority of cases the party or parties seeking to enforce [civil] rights will be plaintiffs and/or plaintiff-intervenors." S. Rep. No. 94-1011, at 4 n.4 (1976), reprinted in 1976 U.S.C.C.A.N. 5908, 5912 n.4 (emphasis added). Courts have accordingly awarded fees to persons falling within the plaintiff-intervenor category, provided they have "play[ed] a significant role in the litigation." Grove v. Mead Sch. Dist. No. 354, 753 F.2d 1528, 1535 (9th Cir. 1985); see also Wilder, 965 F.2d at 1204 (collecting cases).

Given the above, the threshold legal issue here boils down to whether the absence of standing deprived the Original Intervenors of the right to qualify for fees under § 1988. We see no reason why that should be so in the exceptional circumstances of this case.

Key to our analysis is the Supreme Court's ruling that a party who lacks standing can nonetheless take part in a case as a permissive intervenor. See S.E.C. v. United States Realty & Improvement Co., 310 U.S. 434, 459 (1940). Obviously, if lack of standing were a bar to intervening party status, the Original Intervenors could not recover fees here, since someone not a party could scarcely be a "prevailing party" under § 1988. However, the Court held in U.S. Realty that it was not an abuse of discretion to allow the Securities and Exchange Commission to occupy the role of an intervenor even though it was not directly involved in the factual dispute at bar. See id. at 460. The Court declared that Federal Rule of Civil Procedure ("FRCP") 24(b),[2] which governs permissive intervention, "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." Id. at 459; see also

_____

[2] "Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b).

Employee Staffing Servs., Inc. v. Aubry, 20 F.3d 1038, 1042 (9th Cir. 1994) (stating that "the requirement of a legally protectable interest applies only to intervention as of right under Rule 24(a), not permissive intervention under Rule 24(b)"); Nash v. Blunt, 140 F.R.D. 400, 402 (W.D. Mo. 1992) (suggesting that, because redistricting challenges have a statewide impact, the argument for including in-state intervenors without standing is especially strong).

It follows from U.S. Realty that Original Intervenors' lack of standing did not change their status as parties to the action. True, without standing they could not have continued their intervenor status "in the absence of the party [plaintiffs] on whose side intervention was permitted." Diamond, 476 U.S. at 69 (holding that an intervenor's right to continue a suit in the absence of the party on whose side intervention was permitted is contingent upon a showing by the intervenor that he fulfills the requirements of Art. III). But unlike the situation in Diamond, the suit here was carried forward by plaintiffs who, although reduced in number to two, went on to final judgment and received reimbursement as prevailing parties under § 1988. This being so, we see no reason why Original Intervenors do not fit within the mandate of § 1988.

The following factors further support their inclusion within the fees statute.

First, the language of § 1988 does not mention Article III standing as an added requirement, distinct from the stated criterion of "prevailing party." It is true that a plaintiff without standing will not be able to recover fees, but this is because the possession of Article III standing is interwoven into the very concept of plaintiff status. As discussed above, a permissive intervenor without standing may continue to be a party so long as the suit is kept alive by a plaintiff. See id. at 68-69.

Second, while the case law applying § 1988 to intervenors who lack standing is sparse, other courts have allowed attorney's fees to intervenors who have apparently lacked standing. An example of such a case is Wilder v. Bernstein, 965 F.2d 1196 (2d Cir. 1992) (en banc). In Wilder, the full bench of the Second Circuit allowed nineteen private child-care agencies, who were acting as intervenors, to recover

9

attorney's fees arising from an action challenging New York City's foster care system. See id. at 1204. The Wilder court awarded fees even though "intervenors" had not formally joined the action pursuant to FRCP 24, see id. at 1199-1200, and had not asserted a violation of their own rights,**3** see id. at 1202-03. Yet the Wilder court also realized the limitations on such awards to intervenors, citing Grove for the proposition that "[a]wards to intervenors should not be granted unless the intervenor plays a significant role in the litigation." See id. at 1204 (citing Grove, 753 F.2d at 1535).

Third, awarding attorney's fees to these Original Intervenors is not inconsistent with the Supreme Court's interpretation of Congress's intent in enacting § 1988 and similarly worded fee-shifting statutes. The Court has spoken of successful plaintiffs in civil rights cases as "private attorney[s] general" and the "chosen instrument of Congress." Independent Fed'n of Flight Attendants v. Zipes, 491 U.S. 754, 758-60 (1989) (quoting Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 402 (1968) and Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412, 418 (1978)). Section 1988's legislative history contains statements urging courts to use "the broadest and most effective remedies available to achieve the goals of our civil rights laws." Senate Report at 3, reprinted in 1976 U.S.C.C.A.N. at 5910-11; see, e.g., Wilder, 965 F.2d at 1203-04 (§ 1988 interpreted broadly).

Applying these standards, the unique role played here by Original Intervenors supports an award of attorney's fees. This was a major voting rights suit. On each of its two visits to the Supreme Court, plaintiffs' and plaintiff-intervenors' position on the merits was vindicated. The Governor does not question on appeal that Original Intervenors contributed significantly to the success of the litigation and has stipulated to the reasonable amount of their fees. The record contains an affidavit stating that their counsel did at least half the legal research that was necessary with respect to discovery issues, motions and other matters. See Affidavit of Robinson O. Everett ¶¶ 5-6. Their

_____

**3** Wilder was an en banc reversal of a panel holding that intervenors could not recover fees unless they asserted a violation of their own civil rights. See Wilder v. Bernstein, 944 F.2d 1028, 1033-34 (2d Cir.), rev'd en banc, 965 F.2d 1196 (2d Cir. 1992). In citing Wilder, we do not necessarily indicate agreement with the full extent of its holding.

10

attorney took an active role in serving written discovery, defending depositions, responding to discovery motions, retaining expert witnesses, interviewing lay witnesses, and preparing stipulations, briefs and motions. Plaintiff-intervenors' counsel also participated at trial and in argument before the Supreme Court. If recovery under § 1988 is meant to reward those who have undertaken successfully to fulfill the role of a private attorney general, see Newman, 390 U.S. at 402, plaintiff-intervenors appear to have been veritable embodiments of that role.

Two major arguments have been advanced against allowing recovery of a fee. First, the district court reasoned that since those plaintiffs found to be without standing are not allowed to recover fees, plaintiff-intervenors should likewise be barred. But we see no practical unfairness, or, at least, none has been shown. The fact that only two plaintiffs survived the Court's standing requirements is unlikely to have seriously reduced the total amount of fees awarded to plaintiffs' side. To be sure, had all plaintiffs been found to lack standing, no fees would have gone to plaintiffs. But in such event, the Supreme Court would not have reached the merits of the case at all and neither plaintiffs nor plaintiff-intervenors would have been prevailing parties entitled to attorney's fees. As previously noted, plaintiff-intervenors' right to party status -- given their lack of standing -- is dependent upon the existence of at least one plaintiff with Article III standing. See Diamond, 476 U.S. at 68-69. As long as that requirement is met, we see no unfairness in awarding appropriate fees to plaintiff-intervenors as well as to the successful plaintiff or plaintiffs, all of them having contributed significantly to the victory.

There is a second argument against a fees award to intervenors, which we find more troubling. The Supreme Court has held that, in order to qualify as a "prevailing party" within § 1988, a plaintiff must have "obtain[ed] an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement." Farrar, 506 U.S. at 111 (citations omitted); see also S1 & S2, 21 F.3d at 51. A similar requirement appears in other fees cases: "at a minimum, to be considered a prevailing party within the meaning of § 1988, the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." Texas State Teachers Ass'n  v. Garland Indep. Sch.

11

Dist., 489 U.S. 782, 792 (1989) (emphasis added). In Rhodes v. Stewart, 488 U.S. 1 (1988), the Court reiterated the language that it used in Hewitt v. Helms, 482 U.S. 755 (1987), stating that "[t]he real value of the judicial pronouncement -- what makes it a proper judicial resolution of a `case or controversy' rather than an advisory opinion -- is in the settling of some dispute which affects the behavior of the defendant towards the plaintiff." Rhodes, 488 U.S. at 4 (quoting Hewitt, 482 U.S. at 761) (emphasis in original).

Applying this language to Original Intervenors here, it can be contended that because they lack standing, there was no actual "case or controversy" as between them and the defendant, hence the favorable outcome of this case did not change "the legal relationship between [the Original Intervenors] and the defendant," Texas Teachers, 489 U.S. at 792, nor did it "affect[ ] the behavior of the defendant towards [them]," Hewitt, 482 U.S. at 761 (emphasis omitted).

There are two answers to this argument. The most obvious, of course, is that the above cited precedents all dealt with the question of what minima of relief a plaintiff -- not a Rule 24(b) intervenor -- must obtain from a defendant in a lawsuit in order to be entitled to fees as a "prevailing party." Thus, Hewitt involved a plaintiff who actually obtained no relief; Farrar, a plaintiff who received nominal relief; Texas Teachers, a plaintiff who received partial relief; and Rhodes, plaintiffs whose cause of action became moot. These Supreme Court decisions indicate that where the relief a plaintiff secures is so tenuous that the action itself does not resolve a true "case or controversy," no award of fees to the plaintiff (or anyone) is justified. In the present case, however, the two plaintiffs with Article III standing secured precisely the relief that they sought. There is no question whatsoever as to the existence of a live controversy. Original Intervenors, who had properly and formally entered the litigation as intervenors under FRCP 24(b) in support of plaintiffs' cause, were likewise successful in every ordinary sense of that word. As previously indicated, absence of standing does not strip plaintiff-intervenors of intervenor status, see Diamond , 476 U.S. at 68-69, hence an award of fees to these Original Intervenors raises no jurisdictional concern.

12

A second reason strongly supporting a fees grant here is found in the special circumstances of this case. No one seriously questions the importance of Original Intervenors' contribution to the case, nor were fees denied below because of such doubts. Until the Hays decision came down, Original Intervenors, moreover, had good reason to believe that they had Article III standing. The district court so held, relying on case law indicating that a state voter need not actually live within the contours of a flawed congressional district in order to be injured by its unconstitutional establishment. See Hunt, 861 F. Supp. at 426-27. When the Supreme Court rejected this theory, Original Intervenors quickly did what they could to reestablish standing by enlisting the New Intervenors. To deny fees to these successful and significantly helpful plaintiff-intervenors, in these circumstances, seems inequitable.**4**

While we, therefore, hold that Original Intervenors, being prevailing parties, may recover their attorney's fees under§ 1988 for work performed throughout the entire action, we emphasize that our holding is in no way meant to expand the category of persons entitled to fees. Our holding is limited to bona fide parties to an action, a category that may, in appropriate circumstances, include permissive intervenors, but does not encompass "amicus curiae, good samaritans, or . . . litigious meddlers." Wilder, 965 F.2d at 1203 (citing Morales v. Turman, 820 F.2d 728, 732 (5th Cir. 1987) (holding that amicus curiae who never participated as a "party" was therefore not entitled to fees)). District courts, of course, are vested with substantial discretion to deny permissive intervention where inappropriate, thus controlling those who as parties may potentially be entitled to fees. See

_____

**4** As an additional special circumstance, we note that the Supreme Court itself granted costs to the Original Intervenors under Supreme Court Rule 43(2) even after holding that they lacked standing. To be sure, Rule 43(2) and § 1988 implicate different inquiries: an award of costs under Rule 43(2) will not necessarily always imply that the party prevailed and is eligible for attorney's fees under§ 1988. Cf. Kelly v. Metropolitan County Bd. of Educ., 773 F.2d 677, 681 (6th Cir. 1985) (en banc). Nonetheless, the Supreme Court's express recognition of Original Intervenors' right to costs, in the same action resolving the standing issue, further dilutes any contention that they ceased to be parties or did not truly prevail.

13

Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 351 n.4 (1983) (noting that "permissive intervention under Fed. Rule Civ. Proc. 24(b) may be denied in the discretion of the District Court").

Moreover -- and this is a point that we stress-- it is not every permissive intervenor who will be entitled to fees. Courts should deny fees to intervenors who have failed to play a "significant role in the litigation." Grove, 753 F.2d at 1535. Courts should certainly deny fees to meddlesome or officious intervenors whose services have been counterproductive or have, at most, been duplicative of work better left to plaintiff's counsel. Cf. Donnell v. United States, 682 F.2d 240, 246 (D.C. Cir. 1982) (stating that Congress did not intend an award of attorney's fees for an intervenor to "be as nearly automatic as it is for a party prevailing in its own right"). All that we hold here is that, in the rather exceptional circumstances of this case, Original Intervenors -- having satisfied all relevant criteria both to be "prevailing parties" and to recover fees -- are entitled to recover their fees under § 1988.

Our holding today precludes New Intervenors' attempt to "relate back" their claim for attorney's fees. Underlying that theory is the purported inequity of denying fees for legal work done on behalf of the Original Intervenors. Since Original Intervenors may recover these same fees in their own right, there is no need to explore an alternate theory, and, indeed, a finding for New Intervenors might improperly allow the award of duplicative fees.

REVERSED AND REMANDED FOR AN AWARD
OF FEES TO ORIGINAL INTERVENORS

14