**In re James E. DERESINSKI and Beverley A. Deresinski, Debtors.**

**John Deere Company, Plaintiff,**

**v.**

**James E. Deresinski, Defendant.**

**Bankruptcy No. 97–7363–BKC–3P7. Adversary No. 97–79.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

July 11, 2000.

Richard R. Thames, Jacksonville, FL.

Ronald Bergwerk, Jacksonville, FL.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Chief Judge.

This proceeding came before the Court upon Opinion and Order of the United States District Court for the Middle District of Florida, Jacksonville Division, entered on March 29, 2000 remanding with instructions to determine an appropriate award of attorney's fees under applicable law. The Court held a status conference on April 27, 2000 and asked the parties to submit briefs in lieu of oral argument. Upon the evidence presented and the submissions of the parties, the Court enters the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. On March 7, 1997 John Deere Company ("Plaintiff") commenced an adversary proceeding against the debtors, James E. Deresinski ("Defendant") and Beverley A. Deresinski, seeking to except a debt of $11,667.30 from their discharge pursuant to 11 U.S.C. § 523(a)(6). (Adv.Doc.1.) By order dated November 12, 1997 the Court dismissed Beverley Deresinski as a party defendant. (Adv.Doc.19.) On January 5, 1998, following a trial on the merits, the Court entered Judgment in favor of Plaintiff and against Defendant, and excepted $7,103.21 from Defendant's discharge pursuant to 11 U.S.C. § 523(a)(6). (Adv. Doc.27.)

2. On January 20, 1998 Plaintiff, as prevailing party, moved to tax attorney's fees in the amount of $5,778.25 and costs in the amount of $1,265.09. (Adv.Doc.29.) The Court held a hearing on the motion of February 18, 1998. (Adv.Doc.36.) Plaintiff amended its request in open court to bring the fees current through December 1997. (Feb. 18, 1998 Tr. at 23–24.) The

revised request was for $7,043.34 in attorney's fees and $1,479.87 in costs. (*Id.*) At the hearing, Plaintiff elicited testimony from an expert witness concerning the reasonableness of attorney's fees. (Feb. 18, 1998 Tr. at 6–10.) Plaintiff also moved into evidence Amended Affidavit of Attorney Fees and Costs, Transcript of October 16, 1997 Trial, John Deere Consumer Products Dealer Agreement Dated March 24, 1988 and John Deere Dealer Guaranty. (Pl.'s Exs. 1–4.)

3. By order dated February 20, 1998 the Court granted Plaintiff's motion as to costs, but denied its request for attorney's fees. (Adv.Doc. 39.) The Court determined that it had no statutory or other authority to award fees, and that the tort nature of the dischargeability claim called for the application of the American rule that attorney's fees are not recoverable. Notwithstanding, the Court indicated both at the hearing on the motion for attorney's fees and in the order denying the motion that if it were required to award fees, it would award one-third of the amount sought by Plaintiff.[1] (Feb. 18, 1998 Tr. at 31; Adv.Doc 39.)

4. Plaintiff filed Notice of Appeal (Adv. Doc.41) from Order Denying Plaintiff's Motion for Attorney's Fees and Awarding Costs, and the proceeding eventually came before the Honorable Howell M. Melton, Senior United States District Judge, Middle District of Florida, Jacksonville Division (Case No. 98–Civ–292–J–12).

5. On March 29, 2000 Judge Melton entered Opinion and Order reversing and remanding the order entered by this Court with instructions to determine an appropriate award of attorney's fees under applicable law. Judge Melton found authority to award fees pursuant to *TranSouth Financial Corp. of Florida v. Johnson,* which holds that "a creditor successful in a dischargeability proceeding may recover attorney's fees when such fees are provided for by an enforceable contract between the creditor and debtor." 931 F.2d 1505, 1509 (11th Cir.1991).

6. Plaintiff contends, as a prevailing creditor in the dischargeability claim, it is entitled to attorney's fees because such fees are provided for by contract. Plaintiff originally requested compensation for 51.45 hours expended for a total fee of $7,043.34. However, Plaintiff concedes "that $665 should be deducted from the total fee request for the 3.8 hours spent pursuing the claim against Mrs. Deresinski."[2] (Pl.'s Mem. at 5; Feb. 18, 1998 Tr. at 22.) Accordingly, Plaintiff urges the Court to grant attorney's fees in the amount of $6,378.34.[3] Plaintiff maintains that the request is reasonable under the circumstances.

7. Defendant points out that Plaintiff was only partially successful on its claim against James Deresinki and completely unsuccessful on its claim against Beverley Deresinski. Defendant contends that the amount of time expended by Plaintiff is unreasonable considering the dearth of disputed facts regarding the successful claims, the lack of complexity of the legal issues, the amount at issue, and the fact that most of the time was expended on claims against Beverley Deresinski and unsuccessful claims against James Deresinski. Defendant asserts that a sufficient

---

1. In its memorandum, Plaintiff erroneously, albeit intentionally, asserts that the district court advised this Court that such an arbitrary award of fees would be improper. (*See* Pl.'s Mem. at 10.) However, the district court made no such instruction. To the contrary, the district court specifically stated that "this issue is not properly before the Court as the bankruptcy court's statements are dicta in light of its ultimate ruling that it had no statutory or other authority to award attorney's fees in the case." (Adv.Doc. 59 at p. 5.) *See* Fed.R.Bankr.P. 9011 (noting legal and factual representations to court must be warranted by existing law or supported by evidence; otherwise sanctions may be appropriate).

2. Apparently, Plaintiff inadvertently utilized an hourly rate of $175. Nonetheless, the Court has independently performed its own calculations. *See infra* notes 11–12 and accompanying text.

3. *See infra* note 12 and accompanying text.

time expenditure for the successful claims is fourteen hours,[4] at an hourly rate of $130, yielding a reasonable fee award of $1,820.

## CONCLUSIONS OF LAW

■ In *TranSouth*, 931 F.2d at 1507, the Eleventh Circuit held that "[o]nce at debt has been determined nondischargeable, a creditor's attorney's fees, if provided for by contract, are included as part of the nondischargeable debt." Thus, a creditor who prevails in a dischargeability action is properly awarded attorney's fees if a valid contract provides for such an award. *Id.* In the present case, it is undisputed that Plaintiff prevailed[5] on its § 523 claim and the contract between Defendant and Plaintiff provides for the payment of reasonable attorney's fees upon default. Therefore, the Court need only determine an appropriate award of attorney's fees under applicable law.

### I. Attorney's Fees

■ Under federal law, attorney's fees are awarded based on the lodestar method of computation. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–18 (5th Cir.1974). The Supreme Court of Florida has also adopted the lodestar approach. *See Florida Patient's Compensation Fund v. Rowe*, 472 So.2d 1145, 1150 (Fla.1985). Determining a reasonable attorney fee is a two-step process.[6] First, a court is to determine the "lodestar," which is the product of the number of hours reasonably expended and a reasonable hourly rate. *See Hensley*, 461 U.S. at 425, 103 S.Ct. 1933; *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir.1999); *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir.1996). Next, a court may adjust the lodestar to account for other considerations not yet figured in the computation, the most important being the relation of the results obtained to the work done. *See Hensley*, 461 U.S. at 434, 103 S.Ct. 1933; *Andrews v. United States*, 122 F.3d 1367, 1375 (11th Cir.1997). The fee applicant bears the burden of establishing the appropriate hours and hourly rate. *See Hensley*, 461 U.S. at 437, 103 S.Ct. 1933.

### A. Lodestar

#### 1. Hours Reasonably Expended

■ The first step in the computation of the lodestar is to determine the number

---

4. However, Defendant admits that this may be based on a parsimonious time budget. (Def.'s Br. at 3.)

5. Before reaching the issue of reasonableness, a court must first determine whether or not a plaintiff is entitled to any fees. To be entitled to some fee, a plaintiff must cross the threshold by having "prevailed" in the statutory sense. *See Dillard v. City of Greensboro*, 213 F.3d 1347, 1353–54 (11th Cir.2000). Implicit in the district court's ruling in this case is a finding that Plaintiff has "prevailed" in the statutory sense. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Notwithstanding, in order to be considered a prevailing party, a plaintiff must receive at least some relief on the merits of his claim. *See Hewitt v. Helms*, 482 U.S. 755, 761, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987). *See also Farrar v. Hobby*, 506 U.S. 103, 112, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (holding plaintiff who wins nominal damages is prevailing party under 42 U.S.C. § 1988). A plaintiff must prove "the settling of some dispute which affects the behavior of the defen-

dant towards the plaintiff." *Hewitt*, 482 U.S. at 761, 107 S.Ct. 2672. A party need not obtain relief identical to the relief requested, as long as the relief is of the same general type. *See NAACP v. Seibels*, 31 F.3d 1548, 1583 (11th Cir.1994). As the Supreme Court has reemphasized, the "[t]ouchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989); *Rhodes v. Stewart*, 488 U.S. 1, 4, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988). In the present case, Plaintiff obtained a substantial monetary judgment against Defendant and, "[a] judgment for damages in any amount, whether compensatory or nominal, modifies a defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." *Farrar*, 506 U.S. at 113, 113 S.Ct. 566. Accordingly, Plaintiff is clearly a prevailing party.

6. *See supra* note 5 and accompanying text.

of hours reasonably expended. In ascertaining the number of reasonable hours, the Court should exclude "excessive, redundant or otherwise unnecessary" hours from the amount claimed. *See Hensley,* 461 U.S. at 434, 103 S.Ct. 1933. The Court must also deduct time spent on discrete and unsuccessful claims. *See id.* at 435, 103 S.Ct. 1933. Nonetheless, the Court must be reasonably precise in excluding hours thought to be unnecessary. *See Norman v. Hous. Auth. of Montgomery,* 836 F.2d 1292, 1301 (11th Cir.1988). Likewise, the objections and proof from fee opponents must embody similar precision. *See id.*

■■■ At the February 18, 1998 fee hearing, Plaintiff submitted a well-prepared fee application, which includes a summary of the time spent on the different claims, grouped together by the nature of the activity and the stage of the proceeding. The application also sets forth, with particularity, the general subject matter of the time expenditures. Moreover, Plaintiff introduced expert testimony concerning the prevailing view in the Jacksonville area regarding such a lawsuit. Plaintiff does, however, concede that $665 should be deducted from the total fee request for 3.8 hours expended pursuing its claim against Beverely Deresinski.[7]

Defendant contends that much of Plaintiff's effort was consumed by its unsuccessful attempt to establish the liability of Beverley Deresinski and to prove that Defendant had converted certain walk-behind lawn mowers. Defendant indicates that there is an identifiable 3.4 hours devoted to opposing Beverley Deresinski's motions to dismiss and for summary judgment. Defendant also points out that 6.2 hours were spent on the preparation for and depositions of both Defendant and Beverley Deresinski. Because Plaintiff was un-successful in establishing these claims, Defendant argues that Plaintiff should not be compensated for this work.[8] Moreover, Defendant points to individual items that he believes detail poor billing judgment. Specifically, Defendant enumerates the time records submitted by Plaintiff, which show 4.2 hours for the preparation and service of the complaint. Further, Defendant alleges that the time records include 6.2 hours for the second day of trial, which was necessitated by Plaintiff's failure to have a witness present at the original trial. Defendant offers no other evidence to support his conclusion that the number of hours expended is unreasonable.

Upon the evidence, the Court concludes the majority of hours set forth in Plaintiff's affidavit to be reasonable. However, the Court finds it necessary to reduce the number of hours reasonably expended by 3.9 hours, the time directly attributable to Plaintiff's efforts in establishing its case against Beverely Deresinski.[9] On the face of the affidavit, the Court finds no other inordinate, duplicative or otherwise unnecessary hours expended. Moreover, Defendant has failed to offer evidence that establishes with reasonable precision any such excessive efforts. To the contrary, Plaintiff has clearly met its burden in validating the appropriateness of hours. Plaintiff introduced a detailed fee application and testimonial evidence concerning the reasonableness of hours, taking into consideration both the type of lawsuit and the prevailing marketplace. Accordingly, based upon a preliminary lodestar analysis, the Court finds 47.55 hours to be reasonable under the circumstances.[10]

**2. Reasonable Hourly Rate**

■■■ The next step in the computation of the lodestar is to determine the

---

**7.** *See supra* note 2 and accompanying text; *infra* note 9 and accompanying text.

**8.** *See* discussion *infra* Part I.B.

**9.** The Court attributes 3.3 hours of the work to Richard R. Thames and 0.60 hours to Nina M. LaFleur. *See infra* notes 11–12 and accompanying text.

**10.** *See infra* note 12 and accompanying text.

reasonable hourly rate. A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. *See Blum v. Stenson,* 465 U.S. 886, 895–96 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Norman,* 836 F.2d at 1299. The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with the prevailing market rate. *See NAACP v. City of Evergreen,* 812 F.2d 1332, 1338 (11th Cir.1987).

At the February 18, 1998 fee hearing, Plaintiff elicited testimony from W. David Talbert, II, an experienced Jacksonville bankruptcy attorney, concerning the reasonableness of its fee request. Mr. Talbert testified that hourly rates between $125 and $145 per hour are "consistent with or below the normal hourly rates" charged by bankruptcy counsel in matters of this nature. (Feb. 18, 1998 Tr. at 8.) Mr. Talbert also testified that his own hourly rate is $175 per hour and, given the nature of the proceeding, the rate and fee request is reasonable. (*Id.*) In fact, Defendant's counsel conceded at the hearing that the hourly rate is reasonable. (*Id.* at 27.)

In sum, expert analysis and evidence of the prevailing market rate support Plaintiff's detailed affidavit, and Defendant does not dispute the hourly charges. Accord-ingly, the Court finds the hourly rates of $125 and $145 to be reasonable.[11] Based on the preceding, the Court settles on a lodestar figure of $6,744.75.[12]

## B. Adjusting the Lodestar

Once the lodestar is determined, a court may adjust the figure to account for other considerations not yet figured in the computation. In *Johnson,* the former Fifth Circuit enumerated twelve factors a court may consider in determining the reasonableness of an attorney's fee award in a particular case. *See* 488 F.2d at 717–19. *See also Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) (adopting as binding precedent all decisions of former Fifth Circuit handed down prior to October 1, 1981). The *Johnson* factors are:

(1) the time and labor required;

(2) the novelty and difficulty of the questions;

(3) the skill required to perform the legal service properly;

(4) the preclusion of other employment by the attorney due to the acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

---

11. The hourly rates of $125 and $145 are based upon the work of Nina M. LaFleur and Richard R. Thames, attorneys who, at the time of trial, had seven and eleven years experience respectively. Plaintiff's affidavit also includes work of Margaret M. Burnett, an attorney of four to five years experience, and Teresa Kilbourn, a paralegal with four years experience, who charged hourly rates of $125 and $75 respectively. The Court finds the hourly rates of Ms. Burnett and Ms. Kilbourn to be reasonable.

12. The Court was unable to independently confirm the mathematical accuracy of the total fee request sought by Plaintiff in the amount of $7,043.34. The amended affidavit attributes 45.6 hours to attorney Richard R. Thames, 4.35 hours to attorney Nina M. LaFleur, 0.60 hours to attorney Margaret M.

Burnett and 0.90 hours to paralegal Teresa Kilbourn, for a total number of hours expended of 51.45. When adding the product of Mr. Thames' hourly fee and hours expended ($145 × 45.6= $6612), Ms. LaFleur's hourly fee and hours expended ($125 × 4.35= $543.75), Ms. Burnett's hourly fee and hours expended ($125 × 0.60= $75) and Ms. Kilbourn's hourly fee and hours expended ($75 × 0.90= $67.50), the Court reaches a sum of $7,298.25. The Court then subtracts $553.50 from this amount for the 3.9 hours excepted from the total number of reasonable hours allowed; 3.3 hours which were attributable to Mr. Thames ($145 × 3.3= $478.50) and 0.60 hours which were attributable to Ms. LaFleur ($125 × 0.60= $75). Accordingly, the Court utilizes $6,744.75 as the lodestar figure.

(8) the amount involved and the results obtained;

(9) the experience, reputation and ability of the attorney;

(10) the undesirability of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

*Johnson,* 488 F.2d at 717–19. While the lodestar calculation remains the starting point and centerpiece of attorney fee awards, the factors identified in *Johnson* may be relevant in adjusting the lodestar amount. *See Kay v. Apfel,* 176 F.3d 1322, 1327 (11th Cir.1999) (citing *Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989)).

 The most important *Johnson* factor is the relation of the results obtained to the work done. *See Hensley,* 461 U.S. at 434, 103 S.Ct. 1933; *Andrews,* 122 F.3d at 1375. Typically, if the result of the lawsuit was excellent, then a court should compensate for all hours reasonably expended. *See Popham v. City of Kennesaw,* 820 F.2d 1570, 1578 (11th Cir.1987). However, if the results were partial, then the lodestar must be reduced to an amount that is not excessive. *See Hensley,* 461 U.S. at 436–37, 103 S.Ct. 1933. In doing so, a court may attempt to identify specific hours spent on unsuccessful claims or it may simply reduce the award by some proportion. *See id.* The Court finds it appropriate to reduce the award based on the significance of the overall results as a function of the total reasonable hours. *See Popham,* 820 F.2d at 1578.

The Court points out that the relief obtained by Plaintiff—$7,103.21—fell far short of what it sought—$10,559.22.[13] The Court also notes that the amount of the attorney's fee requested is virtually equal to the relief obtained. Therefore, the Court will reduce the lodestar figure proportionally in order to reach an amount that is not excessive. The Court does so by reducing the lodestar by approximately 33%, the percentage difference between the amount sought and the judgment actually awarded. This allows the Court to account for the hours expended by Plaintiff on its unsuccessful claims against Defendant, while reaching a fee that is not excessive. The Court finds none of the remaining *Johnson* factors applicable and concludes an attorney fee award of $4,518.98 is reasonable under the circumstances.[14]

### CONCLUSION

Upon the lodestar method of computation, with a downward adjustment based upon the *Johnson* factors, the Court concludes an attorney fee award of $4,518.98 is appropriate. A separate order granting attorney's fees in that amount will be entered in accordance with these Findings of Fact and Conclusions of Law.

---

**13.** The Court utilizes the amount requested at the conclusion of trial ($10,559.22) as the amount sought, rather than the amount requested in the original complaint ($11,-667.30).

**14.** The Court reaches this amount by multiplying the lodestar figure ($6,744.75) by the percent of the judgment actually awarded in relation to the amount sought ($7,103.21/$10,559.22) or 0.67.